[903 NE2d 1149, 875 NYS2d 828]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUDY KNOX, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELIEZER CINTRON, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCIS JACKSON, Appellant.

Argued January 8, 2009; decided February 17, 2009

## POINTS OF COUNSEL

*Legal Aid Society,* New York City (*Lorca Morello* and *Steven Banks* of counsel), for appellant in the first above-entitled ac-

tion. The Sex Offender Registration Act provision classifying persons as convicted sex offenders based on convictions of offenses containing no element of sexual misconduct violates the state and federal principles of substantive due process and equal protection both on its face and as applied to appellant. (*Doe v Pataki,* 3 F Supp 2d 456; *Daniels v Williams,* 474 US 327; *Youngberg v Romeo,* 457 US 307; *Lawrence v Texas,* 539 US 558; *Moore v East Cleveland,* 431 US 494; *Department of Agriculture v Murry,* 413 US 508; *Cleburne v Cleburne Living Center, Inc.,* 473 US 432; *Romer v Evans,* 517 US 620; *Hernandez v Robles,* 7 NY3d 338; *Poe v Ullman,* 367 US 497.)

*Robert M. Morgenthau, District Attorney,* New York City (*Dana Poole* and *Alan Gadlin* of counsel), for respondent in the first above-entitled action. The Legislature's determination that defendants guilty of kidnapping offenses against minors are subject to the registration provision of the Sex Offender Registration Act is entirely constitutional, and that requirement was properly applied to defendant. (*People v Stuart,* 100 NY2d 412; *People v Windham,* 10 NY3d 801; *People v Charache,* 9 NY3d 829; *People v Nieves,* 2 NY3d 310; *People v Stevens,* 91 NY2d 270; *T. W. Oil v Consolidated Edison Co. of N.Y.,* 57 NY2d 574; *Matter of Barbara C.,* 64 NY2d 866; *People v Lewis,* 5 NY3d 546; *People v White,* 53 NY2d 721; *People v Cintron,* 46 AD3d 353.)

*Legal Aid Society,* New York City (*Mitchell J. Briskey* and *Steven Banks* of counsel), for appellant in the second above-entitled action. I. The mandatory application of the Sex Offender Registration Act to Mr. Cintron, even though his 1989 conviction for unlawful imprisonment was wholly devoid of sexual conduct or motivation, denies him due process and equal protection of the law. (*Wolff v McDonnell,* 418 US 539; *Mathews v Eldridge,* 424 US 319; *County of Sacramento v Lewis,* 523 US 833; *People v David W.,* 95 NY2d 130; *Reno v Flores,* 507 US 292; *People v Onofre,* 51 NY2d 476; *Washington v Glucksberg,* 521 US 702; *Hernandez v Robles,* 7 NY3d 338; *Affronti v Crosson,* 95 NY2d 713; *Paul v Davis,* 424 US 693.) II. The hearing court erred in refusing to consider a downward departure and only adjudicate Mr. Cintron a level one offender, where the Sex Offender Registration Act: Risk Assessment Guidelines do not take into account whether the acts underlying the conviction involved sexual conduct or motivation. (*H & J Blits v Blits,* 65 NY2d 1014; *People v Williams,* 56 NY2d 236; *Doe v Pataki,* 3 F Supp 2d 456; *Matter of VanDover v Czajka,* 276 AD2d 945; *People*

*v Inghilleri,* 21 AD3d 404; *United States v Scott,* 270 F3d 632; *People v Irizarry,* 36 AD3d 473; *People v Walker,* 83 NY2d 455.)

*Robert T. Johnson, District Attorney,* Bronx (*Noah J. Chamoy, Joseph N. Ferdenzi* and *Rafael Curbelo* of counsel), for respondent in the second above-entitled action. I. The State of New York could rationally require Eliezer Cintron to register under the Sex Offender Registration Act for his unlawful imprisonment of two children not his own, a crime that entailed a risk of sexual abuse. (*People v Stevens,* 91 NY2d 270; *Doe v Pataki,* 120 F3d 1263, 522 US 1122; *People v Taylor,* 42 AD3d 13, 9 NY3d 887; *New York v Ferber,* 458 US 747; *Montgomery v Daniels,* 38 NY2d 41; *Dalton v Pataki,* 5 NY3d 243, 546 US 1032; *LaValle v Hayden,* 98 NY2d 155; *People v David W.,* 95 NY2d 130; *Immediato v Rye Neck School Dist.,* 73 F3d 454, 519 US 813; *Washington v Glucksberg,* 521 US 702.) II. The Appellate Division correctly determined that the Supreme Court "properly exercised its discretion" in classifying Eliezer Cintron as a level three predicate sex offender. (*People v Mackey,* 49 NY2d 274; *People v Kearns,* 95 NY2d 816; *People v Cadorette,* 41 AD3d 808, 9 NY3d 810; *Matter of VanDover v Czajka,* 276 AD2d 945; *Matter of New York State Bd. of Examiners of Sex Offenders v Ransom,* 249 AD2d 891; *People v Rivera,* 5 NY3d 61, 546 US 984; *People v Cruz,* 30 AD3d 1042, 7 NY3d 712; *People v Guaman,* 8 AD3d 545; *People v Salaam,* 174 Misc 2d 726; *People v Santiago,* 20 AD3d 885.)

*Office of the Appellate Defender,* New York City (*Margaret E. Knight, Richard M. Greenberg* and *Risa Gerson* of counsel), for appellant in the third above-entitled action. I. Where there is no allegation that Francis Jackson's conviction of attempted second degree kidnapping involved any sexual misconduct toward the child who was purportedly abducted, Mr. Jackson's constitutional right to substantive due process was violated by his adjudication as a sex offender. (*Wisconsin v Constantineau,* 400 US 433; *Wieman v Updegraff,* 344 US 183; *Paul v Davis,* 424 US 693; *People v David W.,* 95 NY2d 130; *Morrissey v Brewer,* 408 US 471; *Doe v Pataki,* 120 F3d 1263; *Codd v Velger,* 429 US 624; *Wolff v McDonnell,* 418 US 539; *County of Sacramento v Lewis,* 523 US 833; *People v Bell,* 3 Misc 3d 773.) II. It is a violation of equal protection to stigmatize Francis Jackson as a sex offender because the attempted kidnapping did not involve any allegation of sexual conduct directed at the child, and because many other nonsexual crimes involving children do not require registration under the Sex Offender Registration Act.

(*Hernandez v Robles,* 7 NY3d 338; *Cleburne v Cleburne Living Center, Inc.,* 473 US 432; *People v David W.,* 95 NY2d 130; *Doe v Pataki,* 120 F3d 1263; *People v Stevens,* 91 NY2d 270; *People v Walker,* 81 NY2d 661.)

*Robert T. Johnson, District Attorney,* Bronx (*Noah J. Chamoy, Joseph N. Ferdenzi* and *Rafael Curbelo* of counsel), for respondent in the third above-entitled action. The State of New York could rationally require Francis Jackson to register under the Sex Offender Registration Act for his attempted kidnapping of a child not his own, where he abducted the child in order to force the child's mother to engage in sexual intercourse with others for his personal financial gain. (*People v Stevens,* 91 NY2d 270; *Doe v Pataki,* 120 F3d 1263, 522 US 1122; *People v Cintron,* 13 Misc 3d 833; *People v Taylor,* 42 AD3d 13, 9 NY3d 887; *New York v Ferber,* 458 US 747; *Montgomery v Daniels,* 38 NY2d 41; *Dalton v Pataki,* 5 NY3d 243, 546 US 1032; *LaValle v Hayden,* 98 NY2d 155; *People v David W.,* 95 NY2d 130; *Immediato v Rye Neck School Dist.,* 73 F3d 454.)

### OPINION OF THE COURT

SMITH, J.

Defendants in these three cases committed, or attempted to commit, kidnapping and unlawful imprisonment. Their victims were children, and defendants were not their victims' parents. We hold that the State did not violate defendants' constitutional rights by compelling them to register as "sex offenders," even though there was no proof that their crimes involved any sexual act or sexual motive.

I

Judy Knox approached a group of children in a park, grabbed the arm of an eight-year-old girl and tried to pull her away; her motive, as far as it can be inferred from the record, was to replace one of her own children, of whom she had lost custody. Knox pleaded guilty to attempted kidnapping.

Eliezer Cintron became angry when his girlfriend asked him to leave her apartment, and locked the girlfriend in that apartment, with her one- and two-year-old children, for several days. Cintron was convicted, among other things, of the unlawful imprisonment of each of the children.

Francis Jackson was the employer of a prostitute who tried to quit her job; he reacted by abducting the woman's son and telling her he would kill the child if she did not continue to work for him. Jackson pleaded guilty to attempted kidnapping.

Supreme Court required all three defendants to register under the Sex Offender Registration Act (SORA) (Correction Law § 168 *et seq.*), despite their protests that they were not sex offenders as that term is commonly understood, and so could not constitutionally be subjected to sex offender registration. The Appellate Division affirmed Supreme Court's orders (*People v Knox*, 45 AD3d 274 [2007]; *People v Cintron*, 46 AD3d 353 [2007]; *People v Jackson*, 46 AD3d 324 [2007]). Defendants appeal to us as of right, pursuant to CPLR 5601 (b) (1), and we now affirm.

II

SORA defines "sex offender" to include "any person who is convicted of" any of a number of crimes listed in the statute (Correction Law § 168-a [1]). Among the listed crimes are unlawful imprisonment (Penal Law §§ 135.05, 135.10) and kidnapping (Penal Law §§ 135.20, 135.25), "provided the victim of such . . . offense is less than seventeen years old and the offender is not the parent of the victim" (Correction Law § 168-a [2] [a] [i]). It is not disputed that these three defendants are within the definition of "sex offender" as the statute is written.

SORA requires all people included in this definition to register as sex offenders with the Division of Criminal Justice Services. Among the consequences of registration are: the registrant's name, address, photograph and fingerprints remain on file with the Division (Correction Law § 168-b [1]); the registrant must verify his address annually to the Division, and must appear periodically at a law enforcement agency to provide a current photograph (Correction Law § 168-f [2]); local law enforcement agencies are notified when a registrant moves into their jurisdiction (Correction Law § 168-j); and any caller inquiring about a named individual will be told if that person is a registered sex offender (Correction Law § 168-p). In addition, registrants found to be at "moderate" or "high" risk of reoffending are listed in a directory available on the Internet, containing, among other information, their photographs, addresses, places of employment, and the nature of their crimes (Correction Law § 168-*l* [6]; § 168-q).

Defendants claim that their rights to due process of law and equal protection of the laws under the federal and state constitutions (US Const Amend XIV; NY Const, art I, §§ 6, 11) are violated by requiring them to register under SORA, because the crimes underlying their registration involve no actual, intended

or threatened sexual misconduct. The People acknowledge that there is no evidence of sexual misconduct in any of these cases; they say that the possibility of a sexual motive, or threatened sexual misconduct, cannot be ruled out. But even on the contrary assumption—on the assumption that there was no actual or potential sexual aspect in any of these crimes—we hold that defendants' constitutional rights have not been violated. We find their equal protection claims to be obviously lacking in merit, and we analyze only the due process issues.

Defendants' principal claim is, in essence, that the State has denied them substantive due process by officially attaching to them a label that is false or misleading. Defendants do not dispute that they have committed crimes which warrant finding them a danger to the public, and specifically to children; nor do they dispute that the State could constitutionally require them to register, to keep law enforcement authorities aware of their locations, to be identified to the public as dangerous, and to suffer the other statutory consequences of sex offender registration, apart from the name "sex offender." Defendants assert that registrants under SORA are sometimes subjected to parole or other conditions that are inappropriate for those guilty of no sexual misconduct; for example, they say that some registrants are required to undergo therapy for psychosexual disorders. But the statute itself does not impose such requirements, and defendants do not complain of any parole conditions that were actually imposed on them. Their complaint is with the name under which they are registered. If the State required them to register, for example, as "child predators," they would concededly have no constitutional complaint.

Thus, the interest defendants assert is in not having their admittedly serious crimes mischaracterized in a way that is arguably even more stigmatizing, or more frightening to the community, than a correct designation would be. We do not hold this interest to be constitutionally insignificant. On the contrary, we assume that defendants have a constitutionally-protected liberty interest, applicable in a substantive due process context, in not being required to register under an incorrect label (see *Paul v Davis*, 424 US 693, 701-710, 710 n 5 [1976] [in a procedural due process case, government-imposed stigma may be an infringement of liberty when more tangible interests are also affected]; *Branch v Collier*, 2004 WL 942194, *5-6, 2004 US Dist LEXIS 12386, *18-25 [ND Tex 2004] [in a procedural due process case, liberty interest in not being included in sex of-

fender database]; *Wedges/Ledges of Cal., Inc. v City of Phoenix, Ariz.*, 24 F3d 56, 62 [9th Cir 1994] [showing of protected liberty or property interest required in both substantive and procedural due process cases]).

But while defendants may be asserting a liberty interest, we conclude that they are not asserting a "fundamental right," as due process cases use that term (*see Immediato v Rye Neck School Dist.*, 73 F3d 454, 463 [2d Cir 1996] [a fundamental right is not "implicated every time a governmental regulation intrudes on an individual's 'liberty' "]). All infringements of liberty by the State must be tested under the due process clause, but where no fundamental right is infringed legislation is valid if it is rationally related to legitimate government interests (*Washington v Glucksberg*, 521 US 702, 728 [1997]; *Hope v Perales*, 83 NY2d 563, 577 [1994]). Fundamental rights are those "deeply rooted in this Nation's history and tradition" (*Glucksberg*, 521 US at 721, quoting *Moore v East Cleveland*, 431 US 494, 503 [1977, plurality op]). They include the right to marry (*Loving v Virginia*, 388 US 1 [1967]); the right to have children (*Skinner v Oklahoma ex rel. Williamson*, 316 US 535 [1942]); the right to decide how one's children will be educated (*Meyer v Nebraska*, 262 US 390 [1923]); and the right to engage in private consensual sexual activity (*Lawrence v Texas*, 539 US 558 [2003]). The right not to have a misleading label attached to one's serious crime is not fundamental in this sense, and we therefore apply the rational basis test to defendants' claims.

The governmental interest advanced by SORA is, of course, the protection of the community against people who have shown themselves capable of committing sex crimes. The particular provisions of SORA at issue here were obviously designed to protect children from such crimes. We find the challenged legislation rationally related to this legitimate governmental interest.

SORA was enacted in 1995, the year after the enactment of a federal statute, the Jacob Wetterling Act (42 USC § 14071),* which conditioned certain federal funding on states' enactment of legislation requiring the registration of sexually violent offenders and people who committed crimes against children. The Legislature sought, in enacting SORA, to comply with the Jacob

---

* The Jacob Wetterling Act will be superseded, effective July 1, 2009, by the Adam Walsh Child Protection and Safety Act of 2006 (42 USC § 16901 *et seq.*). The differences between the two federal statutes are not relevant to this case.

Wetterling Act (Sponsor's Mem, Bill Jacket, L 1995, ch 192, at 6), and in including the kidnapping and unlawful imprisonment of children by nonparents among the crimes requiring registration, SORA followed the federal statute's requirements (*see* 42 USC § 14071 [a] [1] [A]; [3] [A]). As defendants point out, however, the Jacob Wetterling Act does not require attaching the label "sex offender" to the perpetrators of these crimes. That was the New York Legislature's choice.

In making this choice, the Legislature could rationally have relied on the fact that a great many cases of kidnapping or unlawful imprisonment of children are indeed sex offenses. A study published in 1990 concluded that "about two-thirds or so of the Non-Family Abductions involved sexual assaults" (David Finkelhor et al., *Missing, Abducted, Runaway, and Thrownaway Children in America*, at 142 [May 1990]). A more recent study found the frequency to be lower, but still quite high: in 46% of the nonfamily abductions studied, the perpetrator had sexually assaulted the child (David Finkelhor et al., US Department of Justice, National Incidence Studies of Missing, Abducted, Runaway, and Thrownaway Children, *Nonfamily Abducted Children: National Estimates and Characteristics*, at 10 [Oct. 2002]).

These statistics refer to what the reports' authors identified as actual sexual assaults. But the Legislature could rationally have found that the statistics understate the problem. It could have found that sexual assault occurs in many cases where there is no direct evidence of it—in cases where the victim is killed, or remains missing, or is unable or unwilling to recount his or her ordeal. Indeed, in the case Congress chose as a prototype—the kidnapping of 11-year-old Jacob Wetterling—there is, as one of the Supreme Court opinions now before us points out (*People v Cintron*, 13 Misc 3d 833, 851 [2006]), no evidence of sexual assault; the perpetrator simply disappeared with Jacob, and neither has ever been found. The Legislature could also have found that, in many cases, the offender intends a sexual assault that is prevented only by the offender's arrest or the escape of the victim. And the Legislature could have found that a child cut off from the safety of everyday surroundings is vulnerable to sexual abuse even if the offender's sexual desires are not the motive of the crime. A kidnapper may plan to prostitute a child, or may seize an unplanned-for opportunity to do so.

In short, the Legislature had a rational basis for concluding that, in the large majority of cases where people kidnap or

unlawfully imprison other people's children, the children either are sexually assaulted or are in danger of sexual assault. In light of this, it was plainly rational for the Legislature to provide that, as a general rule, people guilty of such crimes should be classified as "sex offenders." We therefore reject as without merit the contention—made by Knox, but not the other two defendants in these cases—that the classification is unconstitutional on its face. The more substantial question is whether it is unconstitutional to apply the definition to the minority of cases—perhaps a small minority, but one in which we assume the present cases are included—in which there was neither a sexual assault nor any discernible risk of one. The Legislature might well have made such cases an exception to the requirement that the convicted people register as sex offenders, but we conclude that it acted rationally in not doing so.

The rational basis test is not a demanding one. We have repeatedly quoted the United States Supreme Court's description of it as "a paradigm of judicial restraint" (*FCC v Beach Communications, Inc.*, 508 US 307, 314 [1993]; *see Affronti v Crosson*, 95 NY2d 713, 719 [2001]; *Port Jefferson Health Care Facility v Wing*, 94 NY2d 284, 290 [1999]). There is a strong presumption that legislative enactments are constitutional (*see Montgomery v Daniels*, 38 NY2d 41, 54 [1975]), and a party contending otherwise bears the heavy burden of showing that a statute is "so unrelated to the achievement of any combination of legitimate purposes" as to be irrational (*Affronti*, 95 NY2d at 719, quoting *Kimel v Florida Bd. of Regents*, 528 US 62, 84 [2000]).

Defendants here cannot carry that burden. In deciding not to exclude defendants and others similarly situated from the category of "sex offenders," the Legislature could have considered not only that cases where the term is unmerited are few, but also that the process of separating those cases from the majority in which it is justified is difficult, cumbersome and prone to error. It could rationally have found that the administrative burden, and the risk that some dangerous sex offenders would escape registration, justified a hard and fast rule, with no exceptions. Considering that no fundamental right is at stake— defendants are suffering no worse injustice than being called "sex offenders" instead of "child predators"—the Legislature could constitutionally provide that all those convicted of kidnapping or unlawfully imprisoning children not their own, or of attempting to commit those crimes, be conclusively deemed sex offenders.

In so deciding, we agree with the Illinois Supreme Court, which upheld in *People v Johnson* (225 Ill 2d 573, 870 NE2d 415 [2007]) an Illinois statute similar to SORA. *Johnson* contains a valuable analysis of the issue and review of the relevant authorities; it also contains the observation—with which we agree—that the opinion of Supreme Court in the *Cintron* and *Jackson* cases now before us is "particularly well reasoned" (225 Ill 2d at 588-589, 870 NE2d at 424). We have also considered, and respectfully disagree with, decisions in several other states reaching a contrary conclusion (*State v Robinson*, 873 So 2d 1205 [Fla 2004]; *American Civ. Liberties Union of N.M. v City of Albuquerque*, 139 NM 761, 772, 137 P3d 1215, 1226 [2006]; *State v Reine*, 2003 WL 77174, 2003 Ohio App LEXIS 52 [2003], *cause dismissed* 99 Ohio St 3d 1549, 795 NE2d 686 [2003]).

## III

In the *Cintron* case, another issue must be decided. While Knox and Jackson were adjudicated level one (low risk) sex offenders, Cintron was found to be level three (high risk). He acknowledges that the designation is supported by a numerical calculation made in accordance with guidelines promulgated by the Board of Examiners of Sex Offenders (*see People v Johnson*, 11 NY3d 416 [2008]), but argues that the courts below abused their discretion in not departing from the guideline level, since the crimes that gave rise to the adjudication did not involve sex. We find no abuse of discretion.

Cintron has a long record of violent conduct, including sexual violence. Before the offenses involved in the present case (which occurred in 1987 and for which Cintron was incarcerated until 2006), he had been convicted of reckless endangerment for setting fire to a former girlfriend's house; attempted first degree assault, for attacking with a bottle someone who intervened in a fight between him and his girlfriend; and sexual misconduct, in a case where he had been charged with forcing a 16-year-old girl to have intercourse. A case summary prepared by the Board of Examiners of Sex Offenders reports that in 2000, while Cintron was incarcerated, "he was the subject of a serious Tier III Sex Offense." It is, no doubt, ironic that the crimes leading to Cintron's registration apparently had no sexual element, but we cannot say on this record that it was an abuse of discretion to conclude that there is a high risk he will commit a sex crime in the future.

## IV

Accordingly, the orders of the Appellate Division should be affirmed, without costs.

Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

In each case: Order affirmed, without costs.