This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------

No. 65
The People &c.,
          Respondent,
     v.
Quanaparker Howard,
          Appellant.


          Kathryn Friedman, for appellant.
          Nicholas T. Texido, for respondent.


DIFIORE, Chief Judge:

          In People v Knox (12 NY3d 60, 69, cert denied 558 US
1011 [2009]), we held that "the Legislature c[an]
constitutionally provide that all those convicted of kidnapping
or unlawfully imprisoning children not their own, or of

- 1 -

attempting to commit those crimes, be conclusively deemed sex offenders" -- subject to the Sex Offender Registration Act (SORA) -- even where there "was neither a sexual assault nor any discernible risk of one" associated with the SORA-qualifying offense.

Defendant does not dispute that he is a "sex offender" as defined by SORA. Rather, he protests his adjudication as a risk level three sex offender by the SORA hearing court following convictions for the assault and the unlawful imprisonment of his then-girlfriend's eight-year-old son during which he caused serious physical injury to the child with a dangerous instrument. Specifically, the issue on appeal is whether the SORA hearing court abused its discretion in adjudicating defendant a risk level three where the unlawful imprisonment conviction, the qualifying crime for SORA, did not involve a sexual component. We find no abuse of discretion on this record.

I.

By all accounts, the facts are egregious. Defendant, along with his codefendant, tied codefendant's eight-year-old son up, naked, in a standing position and repeatedly beat him with dangerous instruments for a period of approximately five days. The child, bruised and battered, was discovered by police in an "upper bedroom naked with his arms tied to the closet and bed post, a sock stuck into his mouth, a pillowcase tied over his head, [and] socks tied on his wrists and his feet with electrical

cord."  As a result of this ordeal, the child suffered a collapsed lung, bruised intestines, a lacerated liver and pooled blood in the abdomen.  Defendant was convicted of first-degree unlawful imprisonment (Penal Law § 135.10), two counts of first-degree assault (id. § 120.10 [1]), and one count each of second degree assault (id. § 120.05 [8]) and endangering the welfare of a child (id. § 260.10 [1]).

As a nonparent convicted of unlawful imprisonment of a victim less than 17 years of age, defendant was required to register as a sex offender pursuant to SORA (Correction Law § 168 et seq.).  In preparation for defendant's release, the Board of Examiners of Sex Offenders (the Board) prepared a Risk Assessment Instrument (RAI) that assessed defendant a risk factor score of 55 points, warranting a level one classification.[1]  The Board had assessed 0 points for risk factor 2, "Sexual Contact with Victim."  The Board noted, however, that under the Guidelines, an override to level three was applicable because defendant inflicted serious physical injury to his victim.  The Board further noted that no departure from that presumptive risk level was warranted.

At defendant's SORA hearing -- at which defendant

---

[1] A score between 0 and 70 results in a presumptive risk level one classification, while a score between 70 and 110 points results in a presumptive risk level two classification, and a score greater than 110 points results in a presumptive risk level three classification (SORA: Risk Assessment Guidelines and Commentary at 3 [2006] [hereinafter Guidelines]).

waived his right to appear -- defense counsel argued that a level one classification was appropriate, stating that "the defendant's scored at a Level 55.  It does not appear that any of the accusations of which [defendant] was accused were of a sexual nature and, therefore, we would not dispute the score of 55 and ask that there be no departure."

The People, on reviewing the RAI, requested that for risk factor 1, "Use of Violence" in the current offense, the court assess defendant 30 points, as opposed to the 15 points assessed for "[i]nflicted physical injury," because defendant was "armed with a dangerous instrument."  This additional 15 points brought the total risk factor score to 70 points, still a presumptive risk level one.  The People also agreed with the Board's application of the presumptive override to risk level three on the basis that the offender inflicted serious physical injury.

Defense counsel responded, arguing that "this is a sex, S-E-X, offender registration.  And because [defendant's] crime does not appear to have any of those connotations and allegations I think that a Level 1 is appropriate."

County Court adjudicated defendant a level three sex offender, finding defendant's total risk factor score was 70 -- constituting a risk level one -- but employing the override to a presumptive risk level three for infliction of serious physical injury.  The court "agree[d] with the Board's recommendation and

the People's on the [p]resumptive [l]evel [three]."  The court declined to depart from that presumptive level, highlighting "the extensive serious injury inflicted upon the victim" which included "torture inflicted" and finding that defendant "pose[d] a serious risk to public safety that [wa]s not captured by the scoring instrument."

The Appellate Division unanimously affirmed for the reasons stated by County Court (125 AD3d 1331 [4th Dept 2015]). This Court granted leave to appeal (25 NY3d 906 [2015]), and we now affirm.

II.

At a SORA hearing, the People must prove the facts to support a SORA risk-level classification by clear and convincing evidence (Correction Law § 168-n [3]).  Here, defendant ultimately scored a total of 70 points on the RAI, warranting classification as a level one sex offender, and that score is not at issue in this appeal.  However, the RAI also provides for four automatic overrides, the application of which will result in a presumptive risk assessment of level three (see Guidelines at 3-4).  Relevant to this appeal, one of these overrides is for the "infliction of serious physical injury or the causing of death" (id. at 3).  There is no dispute that defendant was convicted of the crime of first-degree assault, wherein he caused serious physical injury to the victim by the use of a dangerous instrument, (see Penal Law § 120.10 [1]), and, therefore, the

override was properly applied.

Nevertheless, the hearing court has the discretion to depart from a presumptive level (see Knox, 12 NY3d at 70). We have held that such departures are "the exception, not the rule" (People v Johnson, 11 NY3d 416, 421 [2008]). In determining whether to depart from a presumptive risk level, the hearing court weighs the aggravating or mitigating factors alleged by the departure-requesting party to assess whether, under the totality of the circumstances, a departure is warranted (People v Gillotti, 23 NY3d 841, 861 [2014]).[2]

In People v Cintron, decided in tandem with Knox, we addressed the question of whether "the courts below abused their discretion in not departing from the guideline level [three], since the crimes that gave rise to the adjudication did not involve sex" (12 NY3d at 70). We answered that question in the negative, citing defendant Cintron's "long record of violent conduct, including sexual violence" (id.).

In the present appeal, defendant's argument that the SORA court erred in adjudicating him a level three sex offender is essentially twofold. Defendant argues (1) that SORA is unconstitutional as applied to him and (2) that the SORA court abused its discretion in "engaging in an upward departure" from a risk level one to three because defendant's crime did not involve

---

[2] Notably, Gillotti was decided after defendant's SORA hearing in this matter.

a sexual component.

                          III.

          Defendant's constitutional argument is unpreserved for
this Court's review (see People v Windham, 10 NY3d 801, 802
[2008]).

          As to defendant's remaining argument, defendant
characterizes his level three adjudication as an "upward
departure" from the presumptive risk level one warranted by the
70 points he was assessed.  However, the application of the
override for "infliction of serious physical injury,"
"automatically result[s] in a presumptive risk assessment of
level [three]" (Guidelines at 3).  Therefore, properly framed,
defendant's argument is that the SORA court abused its discretion
in declining to engage in a downward departure from the
presumptive risk level three.  We disagree.

          Defendant's sole argument to the SORA court was that
the absence of a sexual component to his crime, in and of itself,
warranted a level one adjudication.  That factor, the existence
of which was not in dispute, was considered in defendant's RAI
wherein the Board assessed him 0 points for risk factor 2 --
Sexual Contact with Victim.  Defendant made no other argument of
a mitigating factor to the SORA court in support of a downward
departure.  In the exercise of its discretion, the SORA court
declined to depart from the presumptive risk level three.

          At the SORA hearing, defendant was represented by

counsel and afforded an opportunity to present any other
mitigating factors.  There is nothing in the record to suggest
that the hearing court felt it did not possess the discretion to
depart from the presumptive level three, nor to suggest that the
hearing court did not exercise that discretion (cf. People v
Reynolds, 68 AD3d 955, 955-56 [2d Dept 2009]).  In fact, the
court found that such a downward departure was not "warranted by
the evidence," making the finding that based on "the torture
inflicted" defendant "poses a serious risk to public safety that
is not captured by the scoring instrument."

On appeal, defendant attempts to distinguish his case
from that of People v Cintron because he has no past criminal
history of sexual offenses.  However, absence of past sexual
offenses alone does not compel a conclusion that the hearing
court abused its discretion.  Defendant was assessed no points
for criminal history on his RAI and he made no argument before
the SORA court that his past criminal history was not properly
considered as a mitigating factor.[3]

---

[3] The dissent focuses on the standard by which County Court
assessed the quantum of proof supporting the existence of the
alleged mitigating factors -- that there was no sexual component
to his offense and that defendant's criminal history did not
include any sex crime or sexual violence.  However, there was no
factual dispute as to the existence of those factors, and the RAI
reflected that "0" points were assessed for both.  Therefore,
County Court had every reason to find the existence of the
factors was established by defendant.  The issue here is whether
County Court properly exercised its discretion "to determine
whether the totality of the circumstances warrant[ed] a
departure" (Gillotti, 23 NY3d at 861).  We also decline to

Defendant's argument asks this Court to have tunnel vision with respect to other aspects of his underlying offense, which included imprisoning a naked eight-year-old victim for five days in a bedroom and torturing him and causing serious physical injury.

Under these circumstances, it was not an abuse of discretion for the SORA court to decline to depart from the presumptive risk level three.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

---

presume that, in affirming County Court's order, the Appellate Division did not properly apply the law, particularly since the decision was rendered after this Court's decision in Gillotti (23 NY3d 841).

People v Quanaparker Howard

No. 65

RIVERA, J.(dissenting):

Defendant was not convicted of a sex offense, but because he was found guilty of first-degree unlawful imprisonment of his codefendant's eight-year-old child, defendant was statutorily classified as a sex offender, and thus subject to the Sex Offender Registration Act (SORA) (Correction Law §§ 168-a [1], [2] [a] [i]).  In accordance with SORA, County Court assigned defendant what it considered an appropriate risk level, which, in turn, determined how much of defendant's personal information would be made public and the duration of his registration after his release from prison.  However, County Court committed a fundamental error when it applied the clear and convincing evidence standard in determining whether a downward departure from the assigned level was warranted in defendant's case.  The proper legal standard, and one consistent with SORA's legislative intent "to carefully guard a defendant's liberty interest," is the less onerous preponderance of the evidence standard (People v Gillotti, 23 NY3d 841, 864 [2014]).

Since the record before us fails to establish that County Court properly determined the existence and weight to be afforded defendant's mitigating factors, the matter should be reversed and

remitted for reconsideration.  I therefore dissent from the majority's decision to let stand a judicial determination based on a standard rejected by this Court, without proper consideration of the merits of defendant's arguments, and which imposes on defendant a lifetime registration requirement with its attendant adverse consequences.

The scope and duration of SORA registration is determined by a court after consideration of recommendations from the People and the Board of Examiners for Sex Offenders (Board).  Under SORA, the assigned notification level depends "upon the degree of the risk of re-offense by the sex offender" (Correction Law § 168-l [6]).  The Board makes its "risk level" assessment based on a numerical score derived from an aggregation of points assigned to various factors identified in a Risk Assessment Instrument (RAI), created and utilized by the Board (SORA, Risk Assessment Guidelines: Commentary at 3 [2006]).  According to the SORA Risk Assessment Guidelines and Commentary (Guidelines) promulgated by the Board, a total score of 70 points results in a level one, low risk designation; over 70 but less than 110 points is assigned a level two, moderate risk designation; and 110 or more points results in a level three, high risk designation (id. at 1, 3).

The Guidelines also impose four automatic overrides resulting in a presumptive risk level three, regardless of the RAI point score (id. at 3-4).  However, the overrides are not mandatory, and a court may depart from the override when

warranted (id. at 4 ["The risk level calculated from aggregating the risk factors and from applying the overrides is 'presumptive' because the Board or court may depart from it if special circumstances warrant."]; see also People v Pettigrew, 14 NY3d 406, 409 [2010] ["The risk level suggested by the RAI, however, is merely presumptive, and the assigning of a risk level is within the sound discretion of the SORA court."]; People v Mingo, 12 NY3d 563, 568 n 2 [2009]).  A departure from the presumptive risk level

> "is premised on a recognition that an objective instrument, no matter how well designed, will not fully capture the nuances of every case.  Not to allow for departures would, therefore deprive the Board or a court of the ability to exercise sound judgment and to apply its expertise to the offender"

(Guidelines at 4).  A court may depart if it concludes "there exists an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines" (id.; Gillotti, 23 NY3d at 861).

This Court held in People v Gillotti that a defendant must establish by a preponderance of the evidence the existence of mitigating circumstances supporting a downward departure from the presumptive risk level (23 NY3d at 861).  If such circumstances exist, "the court must exercise its discretion by weighing the aggravating and mitigating factors to determine whether the totality of the circumstances warrants a departure to avoid an over- or under-assessment of the defendant's dangerousness and

risk of sexual recidivism" (id.).

As relevant here, the Board's RAI assigned defendant 55 points and the People recommended additional points bringing the score to 70. Both scores presumptively placed defendant at level one. However, the Board and the People recommended that defendant be designated a level three risk based on a presumptive override for having inflicted serious physical injury to the child victim of his underlying crime. The People argued that a level three designation was appropriate given concerns for community safety because of defendant's indifference to the life of a child. Both relied on record evidence that defendant and co-defendant, his friend and the child's mother, tied up and subjected the child, while naked, to physical abuse over the course of five days. Defendant beat the child with a belt and a plastic bat. The child was subsequently treated for a collapsed lung, lacerated liver and intestines, and pooled blood in the abdomen. County Court concluded that the People established by clear and convincing evidence facts in support of the presumptive override, and that a downward departure was not warranted by the evidence. The Fourth Department summarily affirmed for reasons stated in the decision by County Court.

Based on the level three designation, among other requirements, defendant must register with the Division of Criminal Services and his name, any aliases, date of birth, race, sex, height, weight, eye color, home address, driver's license

number, a description of his offense, date of conviction, sentence, and a photograph, updated annually, will be published online for the rest of defendant's life (Correction Law §§ 168-b [l] [a],-b [l] [b],-b [l] [c],-h [2]).  Defendant must further appear before the local law enforcement agency with jurisdiction every 90 days to verify his address (Correction Law § 168-h [3]).

At the SORA hearing and on appeal, defendant has consistently argued that his level three designation based on the presumptive override is unwarranted because his underlying conviction does not involve a sex crime.  Defendant contends that a level one designation is appropriate.  Defendant's argument is supported, in part, by the case summary prepared by the Board, in which it concluded that defendant had no prior criminal history and the underlying crime "was not sexually driven."

These circumstances should have been considered as possible mitigating factors supporting a departure from the presumptive level three override in accordance with this Court's reasoning in People v Knox and its companion case, People v Cintron (12 NY3d 60 [2009]).  In Knox, this Court considered a constitutional challenge to SORA by persons, like defendant, who were designated as "sex offenders" for SORA registration purposes even though their underlying crimes did not involve sexual acts or motives. Applying the most deferential constitutional test, the Court determined that the State Legislature had a rational basis for concluding that in the large majority of cases involving

kidnapping or unlawful imprisonment of children by nonparents, the children are either sexually assaulted or in danger of sexual assault (id. at 68-69).  Therefore, the Legislature could rationally provide that "as a general rule, people guilty of such crimes should be classified as 'sex offenders'" (id. at 69). However, the Court recognized that as applied to the minority of defendants whose cases do not involve "a sexual assault nor any discernible risk of one," even if constitutional, "the term is unmerited" (id.).

In Cintron, the Court further considered whether a nonparent defendant classified as a sex offender based on his conviction for unlawful imprisonment of two child victims could be lawfully designated a risk level three (id. at 70).  Defendant Cintron asserted that the courts abused their discretion in failing to depart from the Guideline level because his underlying crime did not involve sex (id.).  The Court rejected this argument, not because this factor was irrelevant, but because the defendant's history included conduct that justified the sex reoffender risk level.  The Court concluded that given the defendant's "long record of violent conduct, including sexual violence," and a serious Tier III Sex Offense committed during incarceration, the Court could not say that the lower courts abused their discretion in determining that Cintron was a high risk to "commit a sex crime in the future" (id.).

As the analyses in these cases illustrate, the fact that an

offender's criminal history does not include any sex crime or sexual violence is a relevant factor in assessing whether classification as a sex offender merits a level three risk designation.[1] However, here, County Court failed to apply the proper standard in determining whether a downward departure from the presumptive level three designation was warranted based on defendant's proposed mitigating factors. The court referenced only the clear and convincing standard in analyzing defendant's risk level, made no distinction between the People's burden and the proof necessary to justify a downward departure from the presumptive override, and failed to discuss how, if at all, it weighed defendant's apparent absence of a criminal history. Thus, there is no support for the majority's assumption that County Court agreed with defendant that mitigating factors existed, and then, based on the totality of the circumstances, found those factors insufficient to warrant a departure (maj op at 3). In fact, County Court made no mention of defendant's argument that because the underlying crime was not a sex crime he

---

[1]The majority's statement that defendant's RAI already accounts for the fact that his underlying crime does not involve sex is a distraction from the issue on appeal (maj op at 7). The Guidelines are explicit that the inquiry is whether "there exists an aggravating or mitigating factor <u>of a kind, or to a degree, that is otherwise not adequately</u> taken into account by the guidelines" (<u>id.</u> [emphasis added]; <u>Gillotti</u>, 23 NY3d at 861). Therefore, even where the factor in question is explicitly considered in the calculation of an offender's RAI score, if the court concludes it is "not adequately taken into account," a court may consider it further in determining whether to depart.

should be classified as a level one offender.  County Court may have agreed that mitigating factors existed, or it may have rejected defendant's argument.  On this record, there is no way to know.

County Court's silence is especially noteworthy given that the sexually violent history this Court singularly relied on in upholding the level three designation in Cintron is lacking from defendant's case.  Additionally, whereas Cintron's level three risk assessment was based on his RAI score, defendant's RAI placed him at a level one, low risk to reoffend, and his level three designation is a consequence of the application of the only guideline override that does not include an element involving a sexual act or motivation.  These circumstances could have tipped in favor of a judicial determination that a level three designation is an "over- . . . []assessment of the defendant's dangerousness and risk of sexual recidivism" (Gillotti, 23 NY3d at 861, citing Knox, 12 NY3d at 70; People v Johnson, 11 NY3d 416, 421 [2008]), and that he did not pose "a high risk [to] commit a sex crime in the future" (Knox, 12 NY3d at 70).[2]

_____

    [2]While I might agree with the majority that we can presume the Appellate Division correctly applied the law because it rendered its opinion after this Court decided Gillotti, that presumption is at odds with the Appellate Division's summary opinion here.  The Appellate Division affirmed "for reasons stated" by County Court, and without at least a citation to Gillotti there is no reason to presume that the court applied the proper standard.  In any event, the Appellate Division opinion sheds no light on how defendant's mitigation factors were considered below.

In light of the unsupportable assumptions necessary to uphold the decision below, I would remand and remit for the court to consider, under the preponderance of the evidence standard, whether the nature of defendant's crime and the absence of a history of sexual violence are mitigating factors within the meaning of SORA, the Guidelines, and this Court's precedent warranting a departure from the level three presumptive override. I cannot agree with the majority that there was no error below and therefore, I dissent.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, without costs.  Opinion by Chief Judge DiFiore.
Judges Pigott, Abdus-Salaam, Stein, Fahey and Garcia concur.
Judge Rivera dissents in an opinion.

Decided May 3, 2016