[50 NYS3d 388]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FREDERICK DIAZ, Appellant.

First Department, April 13, 2017

**APPEARANCES OF COUNSEL**

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Abigail Everett* of counsel), for appellant.

*Darcel D. Clark, District Attorney*, Bronx (*Andrew J. Zapata* and *Nancy Killian* of counsel), for respondent.

**OPINION OF THE COURT**

Andrias, J.P.

Pursuant to Correction Law § 168-a (2) (d) (ii), defendant was required to register as a sex offender in New York based on his conviction in Virginia of murder in the first degree of a victim under 15 years of age, even though the crime did not involve any sexual motivation or conduct. For the reasons discussed below, we find that Correction Law § 168-a (2) (d) (ii), as applied under the specific facts of this case, violates defendant's substantive due process rights under the Federal and New York State Constitutions (US Const, Amend XIV, § 1; NY Const, art I, § 6), and that his adjudication as a sex offender in New York should be annulled.

On December 22, 1989, defendant, then 19, shot and killed his 13-year-old half sister after she threw out his stash of drugs and reprimanded him about his drug dealing. On May 23, 1990, defendant was convicted in Virginia, upon his plea of guilty, of first degree murder (Va Code Ann § 18.2-32) and using a firearm in the commission of a felony (*id.* § 18.2-53.1), and sentenced to an aggregate term of 40 years.

On April 13, 2015, defendant was paroled. Although the underlying offenses did not have any sexual component, defendant was required to register in Virginia under its Sex Offender and Crimes Against Minors Registry Act (Va Code Ann § 9.1-900 *et seq.*) solely because his half sister was under 15 years of age when he murdered her (*id.* § 9.1-902 [A], [D]).

Days after his release, defendant moved to the Bronx to live with his father and brother. Defendant's sister, her husband and their son resided in the same apartment building and defendant also had numerous other relatives in New York.

Defendant's murder conviction would not have required registration had the crime been committed in New York. However, the Board of Examiners of Sex Offenders (Board) required him to register pursuant to Correction Law § 168-a (2) (d) (ii), which mandates registration for those convicted of "a felony in any other jurisdiction for which the offender is required to register as *a sex offender* in the jurisdiction in which the conviction occurred" (emphasis added).

The Board prepared a risk assessment instrument assessing 75 points for defendant. While this would warrant a presumptive risk level two classification, pursuant to the Sex Offender Registration Act (SORA) Risk Assessment Guidelines and Commentary, the Board recommended an automatic override to level three because defendant "inflicted death to the victim." After a hearing, the SORA court found clear and convincing evidence to assess 65 points (presumptively level one) and to impose the automatic override to level three.

The Board's determination that defendant's out-of-state conviction requires registration is reviewable in this risk level proceeding (*see People v Liden*, 19 NY3d 271 [2012]). Because there is no fundamental constitutional right to be free from being stigmatized or branded a sex offender or from having one's reputation impaired, a "rational basis" test (as opposed to "strict scrutiny") is the correct level of review for defendant's claim that Correction Law § 168-a (2) (d) (ii), as applied, violates his substantive due process rights (*see People v Knox*, 12 NY3d 60, 68-69 [2009], *cert denied* 558 US 1011 [2009]). Thus, we must consider whether requiring defendant to register as a sex offender in New York, based on a conviction of a crime that did not have any sexual component but which required registration in Virginia under a broader statute that covers both sex crimes and crimes against minors, is rationally related to the achievement of some conceivable, legitimate, governmental purpose (*id.*).

When SORA was enacted, registration was required only for out-of-state felony convictions with the same essential elements as New York crimes requiring registration (*see* L 1995, ch 192, § 2). In 1999, the legislature added what is now section 168-a (2) (d) (ii) (*see* L 1999, ch 453) to require registration for out-of-state sex offender felonies that have no New York equivalent (*see Matter of Kasckarow v Board of Examiners of Sex Offenders of State of N.Y.*, 33 Misc 3d 1028, 1035 [Sup Ct, Kings County 2011], *affd* 106 AD3d 915 [2d Dept 2013], *affd* 25 NY3d

1039 [2015]). "There are two elements to th[e] subsection: first, the underlying offense must be a felony; second, the offender must be required to register as a *sex offender* in the other jurisdiction as a result of that conviction" (*People v Kennedy*, 7 NY3d 87, 91 [2006] [emphasis added]).

The People argue that a rational basis underlies the application of section 168-a (2) (d) (ii) to defendant because (i) "[b]y amending the Correction Law to include this provision, the Legislature could have been attempting to prevent New York from becoming a haven for sex offenders escaping registration in foreign jurisdictions by simply moving here," and (ii) "[t]he Virginia legislature could have been concerned with the prevalence of a sexual motivation or component to the murder of children under the age of fifteen." However, defendant's murder of his half sister did not have a sexual component and, most significantly, the New York Legislature has not seen fit to include the murder of a victim under 15 years of age as a crime that, in and of itself, would require registration as a sex offender if committed in New York. Although defendant is required to register in Virginia, the Virginia statute and registry is broader, covering both sex offenses and crimes against minors, and there is no persuasive evidence in the record correlating the murder of a victim under 15 with the propensity to commit sexual offenses. Under these particular circumstances, requiring defendant to register as a sex offender is not rationally related to the protection of the public from sex offenders, or to any other legitimate governmental purpose, and the application of section 168-a (2) (d) (ii) to defendant violates his rights to substantive due process.

In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (JWA) (former 42 USC § 14071 *et seq.*), which required states to adopt registration and community-notification provisions overseeing sex offenders or risk losing federal funds. Although the JWA required registration for "a person who is convicted of a criminal offense against a victim who is a minor" (former 42 USC § 14071 [a] [1] [A]), it defined that term as including

> "any criminal offense in a range of offenses specified by State law which is comparable to or which exceeds the following range of offenses: (i) kidnapping of a minor, except by a parent; (ii) false imprisonment of a minor, except by a parent; (iii) criminal sexual conduct toward a minor; (iv) solici-

tation of a minor to engage in sexual conduct; (v) use of a minor in a sexual performance; (vi) solicitation of a minor to practice prostitution; (vii) any conduct that by its nature is a sexual offense against a minor; (viii) production or distribution of child pornography" (former 42 USC § 14071 [a] [3] [A] [i]-[viii]).[1]

In 1995, New York enacted SORA (Correction Law § 168 *et seq.*, as added by L 1995, ch 192, § 2). Section 1 of the Act, entitled "Legislative purpose or findings," states, among other things, that

"[t]he system of registering sex offenders is a proper exercise of the state's police power regulating present and ongoing conduct. Registration will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community. . . .

"Therefore, this state's policy, which will bring the state into compliance with the federal crime control act . . . , is to assist local law enforcement agencies' efforts to protect their communities by requiring sex offenders to register and to authorize the release of necessary and relevant information about

---

1. The JWA was superseded, effective July 27, 2006, by the Adam Walsh Child Protection and Safety Act of 2006 (42 USC § 16901 *et seq.*), which included the Sex Offender Registration and Notification Act (SORNA) (42 USC §§ 16901-16962). SORNA defines "sex offender" as an individual who was convicted of a "sex offense" (42 USC § 16911 [1]). It defines "sex offense" as including both (i) a criminal offense that has an element involving a sexual act or sexual contact with another; and (ii) a criminal offense that is a "specified offense against a minor" (42 USC § 16911 [5] [A]). The term "specified offense against a minor" is defined to mean

> "an offense against a minor that involves any of the following:
> (A) An offense (unless committed by a parent or guardian) involving kidnapping. (B) An offense (unless committed by a parent or guardian) involving false imprisonment. (C) Solicitation to engage in sexual conduct. (D) Use in a sexual performance. (E) Solicitation to practice prostitution. (F) Video voyeurism as described in section 1801 of Title 18 [18 USC § 1801]. (G) Possession, production, or distribution of child pornography. (H) Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct. (I) Any conduct that by its nature is a sex offense against a minor" (42 USC § 16911 [7]).

certain sex offenders to the public as provided in this act" (L 1995, ch 192, § 1).

Thus, "[t]he primary government interest underlying SORA is protecting vulnerable populations[,] and in some instances the public, from potential harm posed by sex offenders" (*People v Alemany*, 13 NY3d 424, 430 [2009] [internal quotation marks omitted and alteration in original]; *see also People v Mingo*, 12 NY3d 563, 574 [2009] [the purpose underlying SORA is "to protect the public from sex offenders"]).

In Virginia, the stated purpose of the Sex Offender and Crimes Against Minors Registry Act is "to assist the efforts of law-enforcement agencies and others to protect their communities and families from repeat sex offenders *and to protect children from becoming victims of criminal offenders* by helping to prevent such individuals from being allowed to work directly with children" (Va Code Ann § 9.1-900 [emphasis added]). To fulfill this broad purpose, the Act creates a registry that requires registration with the Virginia State Police by those convicted of certain sex-related crimes (against both minors and adults) *and* certain other nonsexual crimes targeted against minors, or those otherwise physically helpless or mentally incapacitated (*see id.* § 9.1-902).

More particularly, as is relevant to defendant, the offenses subject to registration include "[m]urder" (*id.* § 9.1-902 [A] [3]), defined as "a violation of, attempted violation of, or conspiracy to violate § 18.2-31 or § 18.2-32 where the victim is (i) under 15 years of age" (*id.* § 9.1-902 [D]).[2] By including murder where the victim is under the age of 15 as a crime requiring registration, despite the lack of a sexual component, Virginia chose to exceed the range of offenses set forth in the JWA. In contrast, those convicted of murdering a juvenile under the age of 15 in New York are not required to register as sex offenders under SORA on that basis alone.

Against this legislative background, even under a highly deferential rational basis scrutiny, the connection between de-

---

**2.** Section 18.2-32 of the Virginia Code Annotated, under which defendant was convicted, provides that

> "[m]urder, other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate or animate object sexual penetration, robbery, burglary or abduction, except as provided in § 18.2-31, is murder of the first degree, punishable as a Class 2 felony."

fendant's crime and the legislative purpose behind SORA is too attenuated to support finding a legitimate governmental interest in applying Correction Law § 168-a (2) (d) (ii) to defendant. The record does not establish a correlation between the murder of a victim under 15 years of age and the propensity to commit sexual offenses. Thus, the legislative purpose of protecting the public from sex offenders is not served by requiring defendant to register as a sex offender in New York pursuant to section 168-a (2) (d) (ii) solely because he is obligated to do so under a broader Virginia statute, which designates the murder of a person under the age of 15, without a sexual component, as an offense subject to registration in a registry that encompasses both sex crimes and crimes against minors.

Requiring such individuals to register as sex offenders in New York also diminishes the registry's usefulness by including offenders who bear no meaningful relationship to SORA's legislative purpose. There is no evidence to suggest that one who commits homicide of a minor in Virginia is more likely to commit a sex offense than one who commits homicide of a minor in New York. The statute also fails to consider the harm caused to the individual who is forced to register, even though he or she has committed a crime that has no sexual component. Being labeled as a sex offender does far more than impose a stigma to one's reputation. It often results in the offender being subjected to social ostracism and abuse, and impedes the person's ability to access schooling, employment, housing, and many other areas.

The People's reliance on *Knox* (12 NY3d 60) is misplaced. In *Knox*, three defendants challenged the constitutionality of SORA as applied to them because SORA required them to register as sex offenders even though, in their particular cases, the crimes they committed, kidnapping and unlawful imprisonment, did not have a sexual component (*id.* at 64). While the defendants did "not dispute that they [had] committed crimes [that] warrant[ed] finding them a danger to the public, and specifically to children," they argued that being labeled as sex offenders was false and misleading (*id.* at 66).

Applying the rational basis test, the Court of Appeals held that requiring the defendants to register as sex offenders under Correction Law § 168-a (2) (a) (i), which requires registration for persons convicted in New York of unlawful imprisonment and kidnapping where the victim is less than 17 years old and the offender is not the victim's parent, did not violate their

constitutional rights (*id.* at 67). Relying on statistics that "in 46% of the nonfamily abductions studied, the perpetrator had sexually assaulted the child" (*id.* at 68), the Court found that even though there was no sexual motive or conduct in the specific cases before it, the legislature could have rationally found that kidnapping and unlawful imprisonment of children are often sexually motivated (*id.* at 68-69). The Court also noted that the legislative history of the JWA shows that Congress intentionally included kidnapping and unlawful imprisonment of a minor as crimes subject to registration, recognizing the link between the abduction of a child and the risk of sexual abuse (*id.* at 67-68).

In contrast to the crimes of kidnapping and false imprisonment before the Court in *Knox*, the JWA did not include the murder of a child under the age of 15, without a sexual component, as a crime subject to registration. Nor has the New York State Legislature elected to include that crime, if committed in New York, as an offense requiring registration under SORA, despite including a registration requirement for certain other crimes against minors where a sexual motivation exists. Again, while registration was required in Virginia, it was under a broader statute and registry that covers both sex offenses and crimes against minors. Of great significance, unlike *Knox*, where the Court of Appeals noted studies showing a strong correlation between child kidnapping and sex offenses (12 NY3d at 68), no similar statistical correlation has been established between child homicide and sex offenses in the record before us.

In arguing otherwise, the People rely on a bulletin issued in 2001 by the Office of Juvenile Justice and Delinquency Prevention (OJJDP), entitled "Homicides of Children and Youth," which, according to the People, shows that children in *middle childhood* are at risk of sexual homicides. However, the bulletin divides minors into three categories—namely, young children (age five and younger), middle childhood (ages 6 to 11) and teenagers (ages 12 to 17)—and states that they should be analyzed separately because they differ on a number of dimensions. Here, defendant's victim was 13 and falls in the teenager category, in which most homicides involve male victims killed by male offenders using firearms, not the middle childhood category on which the People rely. In any event, the bulletin explains as follows:

> "Homicides of children in middle childhood also appear to stem from a variety of other motives. For

example, children of this age are at risk of sexual homicides. Some sex offenders are attracted to children in this age range and sometimes murder children to hide their crimes. A significant number of homicides of children ages 6 to 11 are negligent gun homicides, in which youth and/or other family members wield or misuse firearms that they believe to be harmless or unloaded. Children in middle childhood are also killed in the course of crimes such as robberies or carjackings, in which children are unintended victims. Family members sometimes murder children of this age in the course of arson attacks or whole-family suicide-homicides. The diversity of homicides of children of this age group makes them difficult to typify" (David Finkelhor & Richard Ormrod, *Homicides of Children and Youth*, Juvenile Justice Bulletin, US Department of Justice, OJJDP at 8 [Oct. 2001]).

Thus, unlike *Knox*, the bulletin does not support the conclusion that the murder of a victim under the age of 15 is often, as opposed to occasionally, motivated by sexual intentions. The other study cited by the People, Case Management for Missing Children Homicide Investigation, focuses on abducted children who are subsequently murdered, for which the likelihood of a sexual component has been clearly established.

Insofar as the People contend that defendant's mislabeling argument should have been raised in Virginia, there is no mislabeling in Virginia because the statute there itself covers both sex offenses and crimes against minors, as compared to New York's, which only covers sex offenders. Insofar as the People argue that New York has an interest in including Virginia offenders on the New York registry to prevent the state from becoming a haven for sex offenders from foreign jurisdictions, defendant did not murder his half sister in the course of committing, or to cover up, a sex crime. Therefore, reliance on *Matter of Dewine v State of N.Y. Bd. of Examiners of Sex Offenders* (89 AD3d 88, 92-93 [4th Dept 2011]) is misplaced because there the offender had committed sex crimes in Wyoming that were the equivalent in New York State of sexual abuse in the first and second degree (*id.* at 90). Furthermore, the record establishes that defendant moved to New York because he had numerous family members in the state with whom he maintained a relationship, many of whom submitted letters of support in the SORA proceeding.

In light of our determination annulling the adjudication of defendant as a sex offender, we need not consider defendant's argument that his risk level should be reduced to level one.

Accordingly, the order of the Supreme Court, Bronx County (Raymond L. Bruce, J.), entered November 4, 2015, which adjudicated defendant a level three sex offender pursuant to SORA (Correction Law art 6-C), should be reversed, on the law, without costs, and defendant's adjudication as a sex offender annulled.

MOSKOWITZ, KAPNICK, WEBBER and KAHN, JJ., concur.

Order, Supreme Court, Bronx County, entered November 4, 2015, reversed, on the law, without costs, and defendant's adjudication as a sex offender annulled.