People v Diaz (2018 NY Slip Op 08424)

People v Diaz

2018 NY Slip Op 08424 [32 NY3d 538]

December 11, 2018

Feinman, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, March 13, 2019

[*1]

The People of the State of New York, Appellant,
v
Frederick Diaz, Respondent.

Argued November 13, 2018; decided December 11, 2018

People v Diaz, 150 AD3d 60, affirmed. 

{**32 NY3d at 540} OPINION OF THE COURT

Feinman, J.

New York's Correction Law provides that a person convicted of "a felony in any other jurisdiction for which the offender is required to register as a sex offender" must also register under the New York State Sex Offender Registration Act (SORA) (Correction Law § 168-a [2] [d] [ii]; see Correction Law § 168-k). The issue on this appeal is whether defendant's murder of his half sister, an "[o]ffense for which registration is required" under Virginia's Sex Offender and Crimes Against Minors Registry Act (Va Code Ann § 9.1-902), renders him a "sex offender" for purposes of SORA. We hold that it does not.
I.
In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (JWA). The JWA conditioned federal funding on states establishing "programs that require . . . a person who is convicted of a criminal offense against a victim who is a minor or who is convicted of a sexually violent offense" to register a current address with the State (former 42 USC § 14071 [a] [1] [A], as added by Pub L 103-322, 108 US Stat 2038). Under these two broad categories of convictions, the JWA set forth a list of offenses that required registration, including commonly understood sex crimes such as "use of a minor in a sexual performance," as well as crimes such as noncustodial kidnapping and false imprisonment (former 42 USC § 14071 [a] [3] [A]). Murder without any sexual component, including of minors, has never been a registrable offense under any iteration of the federal scheme.{**32 NY3d at 541}
[*2]
After several amendments to the JWA, including Megan's Law[FN1] as well as the Pam Lychner Act,[FN2] Congress added a reciprocity requirement in 1997. That provision directed states to "include in [their] registration program[s] residents who were convicted in another State" of at least the offenses enumerated in the federal scheme (former 42 USC § 14071 [b] [7], as added by Pub L 105-119, tit I, § 115, 111 US Stat 2440, 2463), while allowing states to require "coverage of any offenses beyond those [enumerated under 42 USC § 14071 (a) (3) (A)-(B)]" as a "matter of state discretion" (64 Fed Reg 572-01, 573 [1999]). The Adam Walsh Child Protection and Safety Act of 2006, which superseded the JWA, continues to place compliance requirements on states subject to guidelines issued by the Attorney General (see 34 USC § 20912).
The New York State Legislature responded to the mandates of the JWA by passing SORA in 1995 (see Correction Law § 168 et seq.). From its inception, the statute has undeniably targeted sex offenders by its plain terms: not only has the legislature limited registration to "[a]ny sex offender" reentering society (Correction Law § 168-f [1] [emphasis added]), it has been explicitly concerned with "provid[ing] law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly" (L 1995, ch 192, § 1 [emphasis added]). SORA defines "sex offender" as "any person who is convicted of any of the offenses set forth in [section 168-a (2) and (3)]," each of which defines "sex offenses" and "sexually violent offenses," respectively (Correction Law § 168-a [1], [2], [3]). While not all crimes requiring registration under SORA involve a sexual component, such offenses are included either as part of the statute's compliance with the federal law (for example, noncustodial kidnapping offenses), or because they are otherwise predatory in nature (see Correction Law § 168-a [2] [requiring registration for first-degree unlawful surveillance pursuant to Penal Law § 250.50]). Thus, SORA's overall purpose of "protect[ing] . . . the community against people {**32 NY3d at 542}who have shown themselves capable of committing sex crimes" is furthered by the scope of its definition of a "sex offender" (People v Knox, 12 NY3d 60, 67 [2009]).
As relevant here, SORA also requires registration of sex offenders from other jurisdictions under section 168-a (2) (d). Originally, this "foreign jurisdiction provision" designated as sex offenders only those who committed offenses in other jurisdictions "which include[d] all of the essential elements of any such felony" enumerated under SORA (former Correction Law § 168-a [2] [b]). That test has since been codified under section 168-a (2) (d) (i); offenders entering New York can now also fall under section 168-a (2) (d) (ii), which requires registration for "a felony in any other jurisdiction for which the offender is required to register as a sex offender in the jurisdiction in which the conviction occurred" (Correction Law § 168-a [2] [d] [ii] [emphasis added]; see Matter of North v Board of Examiners of Sex Offenders of State of N.Y., 8 NY3d 745, 748-749 [2007]). This Court has since articulated the "two elements to this [latter] subsection: first, the underlying offense must be a felony; second, the offender must be required to register as a sex offender in the other jurisdiction as a result of that conviction" (People v Kennedy, 7 NY3d 87, 91 [2006]).
The same year SORA was enacted, Virginia passed its own registry legislation that was even broader in scope than New York's. Virginia's Sex Offender and Crimes Against Minors Registry Act is designed to "assist the efforts of law-enforcement agencies and others to protect their communities and families from repeat sex offenders and to protect children from becoming victims of criminal offenders by helping to prevent such individuals from being [*3]allowed to work directly with children" (Va Code Ann § 9.1-900). True to the statute's broader goal, section 9.1-902 of the Virginia law includes under its "[o]ffense[s] for which registration is required" not only crimes with a clear sexual component—such as rape, human trafficking, and a list of various "[s]exually violent offense[s]"—but also various nonsexual violent crimes against minors, including "[c]riminal homicide" (generally, death resulting from crimes of child abuse and neglect) and "murder" of a minor under the age of 15 (Va Code Ann § 9.1-902). Whether this latter offense falls within the scope of the foreign jurisdiction provision of SORA is the issue we consider here.{**32 NY3d at 543}
II.
In 1989, when defendant was 19 years old, he shot and killed his 13-year-old half sister in Virginia. It is undisputed that there was no sexual component to this crime. Specifically, the Virginia Department of Corrections determined that defendant "had committed the crime because [his half sister] was harassing him about dealing drugs." Defendant also claimed at that time that he was "hearing voices telling him to kill people." Upon his guilty plea, defendant was convicted in May 1990 of murder in the first degree (Va Code Ann § 18.2-32) and using a firearm in the commission of a felony (Va Code Ann § 18.2-53.1) under Virginia law. He was thereafter sentenced to an aggregate prison term of 40 years with 10 years of postrelease supervision.
Before his conditional release from prison in 2015, defendant registered with the Virginia Sex Offender and Crimes Against Minors Registry because his crime was a "violation of . . . [Virginia Code] § 18.2-32 where the victim is . . . under 15 years of age" (Va Code Ann § 9.1-902 [D] [i]). Two days after his release, defendant's postrelease supervision was approved for a transfer to New York, and he moved to Bronx County to live with family.
When defendant moved to New York, the Division of Criminal Justice Services notified the Board of Examiners of Sex Offenders (the Board), which determined that, because defendant was "required to register for [his] felony offense as an offender" under the Virginia registry program, "as a resident of New York . . . [he was] required to do so [under SORA] as well." The Board also recommended that although defendant was "assessed as a Level II (moderate risk) to reoffend" based on the guidelines and points system of SORA's risk assessment instrument, "the fact that [he] inflicted death to the victim automatically result[ed] in a presumptive risk assessment of Level III." Defendant challenged this designation and his obligation to register under SORA in trial court.
Supreme Court adopted the Board's recommendation in its final risk assessment, without addressing defendant's arguments that (1) the Virginia law's distinction between "sex offenders" and "those who commit 'crimes against minors' " means the long arm of SORA's foreign jurisdiction provision does not apply to him; and (2) the statute otherwise violates his substantive due process and equal protection rights.{**32 NY3d at 544}
The Appellate Division reversed Supreme Court, annulling defendant's adjudication as a sex offender (People v Diaz, 150 AD3d 60 [1st Dept 2017], lv granted 29 NY3d 914 [2017]). The Appellate Division based its decision on defendant's constitutional arguments without addressing the dispute over defendant's risk assessment or the applicability of SORA. We granted the People leave to appeal, and now affirm based on the statutory argument raised before Supreme Court.
III.
A.
Defendant argues that Correction Law § 168-a (2) (d) (ii) does not apply to him because he did not register "as a sex offender" under Virginia's registry statute. We must therefore determine whether Virginia considers defendant a sex offender based on the crime he committed in Virginia, consistent with SORA's use of that term in its foreign jurisdiction provision. As noted above, we explained in Kennedy that the foreign jurisdiction provision contains two elements: "first, the underlying offense must be a felony; second, the offender must be required to register as a sex offender in the other jurisdiction as a result of that conviction" (7 NY3d at 91 [emphasis added]). Implicit in that holding is an additional consideration: a reviewing court must determine whether the foreign jurisdiction considers the offender a sex offender before compelling registration under section 168-a (2) (d) (ii). Put another way, if a defendant is required to register for a felony committed in a foreign jurisdiction but is not required to do so "as a sex offender," SORA does not apply.
SORA's text and overarching purpose compel this inquiry (see People v Golo, 26 NY3d 358, 361 [2015], quoting Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998] ["As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof"]). By its plain language, Correction Law § 168-a (2) (d) (ii) necessitates that the Board or a reviewing court first determine [*4]whether the foreign jurisdiction considers the offender a sex offender before turning to other matters such as a risk level assessment or a constitutional analysis.
Moreover, and as discussed above, the legislature was particularly concerned with the dangers posed by sex offenders{**32 NY3d at 545} and potential sex offenders when it enacted SORA. Indeed, the legislature found that "the danger of recidivism posed by sex offenders . . . and . . . the protection of the public from these offenders is of paramount concern or interest to government" and that a "lack of information about sex offenders who live within their jurisdiction" would impede law enforcement's efforts to "identify, investigate, apprehend and prosecute sex offenders" (L 1995, ch 192, § 1 [emphasis added]). Thus, the "as a sex offender" language underscores SORA's purpose of "protect[ing] . . . the community against people who have shown themselves capable of committing sex crimes," while excluding offenders from foreign jurisdictions who have not committed, even in a broad sense, a sex crime (People v Knox, 12 NY3d 60, 67 [2009]). We therefore interpret the statute's applicability to this defendant with these principles in mind.
B.
The Commonwealth of Virginia does not consider defendant a sex offender. Rather, several indicia of the Virginia General Assembly's intent lead us to conclude that Virginia classifies defendant as a perpetrator of a violent, nonsexual crime against a minor. As such, he is not required to register under SORA's foreign jurisdiction provision.
Beginning with the plain language of the Virginia statute, two significant differences from SORA stand out. First, unlike SORA, section 9.1-902 of the Virginia Code does not define either a "sex offense" or a "sex offender," but rather contains a single list of "[o]ffense[s] for which registration is required" (Va Code Ann § 9.1-902 [A]). Second, this provision encompasses such registrable offenses as "Criminal homicide" (Va Code Ann § 9.1-902 [A] [2]), and, as most relevant here, "Murder" of a minor (Va Code Ann § 9.1-902 [A] [3]; [D]), neither of which is included under SORA. That the Virginia statute's twin purposes are to (1) "protect . . . communities and families from repeat sex offenders" and (2) "protect children from becoming victims of criminal offenders" plainly demonstrates the Virginia Legislature's intent to distinguish between sex offenses and other violent, nonsexual crimes committed against minors (Va Code Ann § 9.1-900).
We therefore reject the People's argument that the Virginia statute must "create a barrier between" sex offenses and other crimes to distinguish its registrants. Although the Virginia statute does not clearly define a "sex offense" or a "sex offender," {**32 NY3d at 546}first among the list of registrable offenses in section 9.1-902 is "[a]ny offense listed in subsection B" which, in turn, contains a list of offenses that undeniably contain some sexual component (Va Code Ann § 9.1-902 [A] [1]). These offenses include "Carnal knowledge of certain minors" (Va Code Ann § 18.2-64.1); entering a dwelling with intent to commit rape (Va Code Ann § 18.2-90); engaging in prostitution or human trafficking (Va Code Ann § 18.2-355); sex trafficking (Va Code Ann § 18.2-357.1); and child pornography offenses (Va Code Ann § 18.2-374.1:1). What's more, this list is wholly separate from what the statute labels as "Murder," the crime for which defendant was required to register in Virginia. Thus, even though the Virginia law does not explicitly bifurcate its list of registrable offenses between sex offenses and other crimes, its structure nevertheless fails to raise any inference that Virginia considers defendant a sex offender.[FN3]
Other provisions of the statute bolster this conclusion. Section 9.1-909, for example, explicitly allows people required to "register as a sexually violent offender or murderer" to petition the court of conviction "for relief from the requirement to reregister every 90 days" (Va Code Ann § 9.1-909 [A] [emphasis added]). Similarly, section 9.1-909 (B) allows a "duly appointed guardian of a person convicted of an offense requiring registration or reregistration as either a sex offender, sexually violent offender or murderer" to petition the court for relief in the event a physical condition impedes the offender's ability to either reoffend or reregister (emphasis added). Given the lack of clear definitions for these terms elsewhere in the Virginia statute, the only reading of each is that the term "murderer" applies to an offender who commits "murder" as defined under section 9.1-902 (D), just as a "sex offender" corresponds to someone who commits to "[a]ny offense listed in [section 9.1-902 (B)]" and a "sexually violent offender" matches to someone guilty of committing a "sexually violent offense."
{**32 NY3d at 547}Furthermore, there are no reported cases in Virginia that compel a different interpretation of the registry statute. Although the Supreme Court of Virginia used the phrase "register as a sex offender in Virginia" in Shannon v Commonwealth (289 Va 203, 205, 768 SE2d 433, 435 [2015]), the defendant in that case was charged with an overtly sexual offense—namely "abduction with intent to defile, sodomy, and attempted sodomy" (289 Va at 203, 768 SE2d at 434). Barring any other indication from Virginia's legislature or courts that a "murder" offender is also a sex offender, we base our conclusion on the statutory text.[FN4] C.
We acknowledge that when the New York Legislature added the reciprocity language at issue, it was concerned with avoiding "a detailed analysis of the statutes in other jurisdictions to determine whether registration is required in New York State" (Mem in Support, 1999 NY Assembly Bill A9020). However, this concern was directed at the difficulty with applying section 168-a (2) (d) (i), which predates section 168-a (2) (d) (ii) and requires a comparison of a foreign offense's "essential elements" to SORA's registrable offenses that is more cumbersome than the minimal inquiry required under section 168-a (2) (d) (ii) (see Correction Law § 168-a [2] [d] [i]).[FN5] More importantly, any concern the legislature had with creating a bright-line rule cannot preclude a court from determining whether an offender meets a statute's basic requirements. Blind deference to another jurisdiction's registry without asking, fundamentally, whether that jurisdiction considers its own registrant a sex offender would contravene the plain and limiting language of section 168-a (2) (d) (ii) and could subject an entire class of defendants with no relation to SORA's purpose to its strict requirements.{**32 NY3d at 548}
Nor are we convinced that today's holding will turn this state into an "escape hatch," whereby offenders will come to New York to evade registration in the state of their original offense because New York does not require registration under SORA for offenders who might be required to register in other states. In this case, although defendant is not required to register as a sex offender in New York, his duties to notify Virginia of his future changes in residence do not cease (see Va Code Ann § 9.1-903 [D] [requiring any registrant under the Virginia statute to [*5]reregister with local law enforcement when changing residence, "whether within or without the Commonwealth"]). Similarly, the Virginia registry statute requires all eligible offenders coming into Virginia to notify the state police within three days of entry, whether such entry is permanent or temporary (see Va Code Ann § 9.1-905). Therefore, even if defendant never returns to Virginia, our holding today does not diminish his obligation to keep that state apprised of his whereabouts.
Our analysis in this case "adhere[s] to the well[-]established rule that a court should not address a constitutional question if the matter can be disposed of on some other basis" (see Matter of State of New York v Nelson D., 22 NY3d 233, 238 [2013], citing McKinney's Cons Laws of NY, Book 1, Statutes § 150 [a], Comment). In concluding that SORA does not require defendant's registration because Virginia does not consider defendant a sex offender, we reserve weightier issues of a foreign registry's potential conflict with New York's due process guarantees or public policy for another day. Therefore, we need not address the issues raised in the Appellate Division on this appeal.
Nor do we extrapolate this rule to the various hypotheticals raised by the dissent, none of which are presented in this case. Our holding today merely requires a court or the Board to determine—not based on "intuition," but rather on the offense of conviction and its relation to the foreign registry statute—whether the out-of-state defendant is considered a sex offender before requiring registration under SORA. Because the answer to that question here is clearly "no," the dissent's concerns are inapposite.
IV.
Defendant's out-of-state felony conviction did not require him to "register as a sex offender" in Virginia under {**32 NY3d at 549}Correction Law § 168-a (2) (d) (ii) and, thus, he should not be required to register as a sex offender in New York. Accordingly, the order of the Appellate Division should be affirmed.

Fahey, J. (dissenting). Despite the existence of a statute governing the precise issue before us, the majority has invented its own method of deciding whether a person who was required to register on another jurisdiction's federally compliant sex offender registry must register on New York's sex offender registry. That method is inconsistent with the legislative design. Accordingly, I respectfully dissent.
Defendant was required to register with the Virginia State Police, on that state's Sex Offender and Crimes Against Minors Registry, because he was convicted in Virginia of the murder of a person under 15 years of age (see Va Code Ann § 9.1-902 [D] [i]). It is undisputed that the killing had no sexual aspect. After he was released from prison, defendant immediately moved to New York City. In New York, defendant registered as a sex offender, [*6]pursuant to Correction Law § 168-a (2) (d) (ii), the statute at issue in this appeal, which provides that a registerable sex offense includes "a conviction of . . . a felony in any other jurisdiction for which the offender is required to register as a sex offender in the jurisdiction in which the conviction occurred."
The majority does not resolve defendant's principal contention, that Correction Law § 168-a (2) (d) (ii) violates his constitutional rights (see majority op at 
548),[FN1] but is persuaded by his alternate ground for affirmance, that the provision does not apply to him at all. Defendant's theory is that, as a{**32 NY3d at 550} murderer, he was not "required to register as a sex offender in the jurisdiction in which [his] conviction occurred" (Correction Law § 168-a [2] [d] [ii] [emphasis added]). This conclusion is not consistent with either the facts of this case or the plain language or legislative history of Correction Law § 168-a.
In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (former 42 USC § 14071 et seq.), which required states to adopt registration and community-notification provisions for the supervision of convicted sex offenders. The federal statute compelled registration of "a person who is convicted of a criminal offense against a victim who is a minor or who is convicted of a sexually violent offense" (former 42 USC § 14071 [a] [1] [A]; see also former 42 USC § 14071 [a] [3] [A] [defining a criminal offense against a minor]). Accordingly, the following year, New York enacted the Sex Offender Registration Act (SORA) (Correction Law § 168 et seq.), requiring that convicted sex offenders and those convicted of certain offenses against minors register with the Division of Criminal Justice Services upon their release from custody (see L 1995, ch 192, § 2).
SORA defines "[s]ex offender" broadly as "any person who is convicted of any of the offenses set forth in [Correction Law § 168-a (2) or (3)]" (Correction Law § 168-a [1]). Correction Law § 168-a (2) enumerates "[s]ex [*7]offense[s]" and Correction Law § 168-a (3) lists "[s]exually violent offense[s]." Among the enumerated crimes are some that have no sexual component, including unlawful imprisonment (Penal Law §§ 135.05, 135.10) and kidnapping (Penal Law §§ 135.20, 135.25), "provided the victim of such . . . offense is less than seventeen years old and the offender is not the parent of the victim" (Correction Law § 168-a [2] [a] [i]; see People v Knox, 12 NY3d 60, 66 [2009]).[FN2] A person is a "sex offender," within the meaning of SORA, if covered by the detailed definitional provisions of Correction Law § 168-a and, therefore, required to register under SORA, regardless of whether the person was convicted of a{**32 NY3d at 551} sexual crime or instead a registerable offense against a minor that has no sexual component or aspect.
When SORA was enacted in 1995, New York required registration based on out-of-state felony convictions only for those that have the same essential elements as New York crimes requiring registration (see L 1995, ch 192, § 2; former Correction Law § 168-a [2] [b]). In 1997, Congress directed "each State [to] include in its registration program residents who were convicted in another State" (former 42 USC § 14071 [b] [7]) and did so without limitation to those convicted of offenses enumerated in the federal scheme. In its guidelines issued under the Jacob Wetterling Act, the Department of Justice explained that "a state must register . . . at least those persons [who commit the crimes enumerated in the statute] to comply with the Act. The coverage of any offenses beyond those offenses is a matter of state discretion" (Megan's Law; Final Guidelines for the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, as Amended, 64 Fed Reg 572-01, 573 [1999]).
In 1999, the New York Legislature exercised that discretion by requiring, for the first time, registration for out-of-state sex offender felonies that have no New York equivalent, provided that "the offender is required to register as a sex offender in the jurisdiction in which the conviction occurred" (L 1999, ch 453, § 1). That requirement was subsequently codified as Correction Law § 168-a (2) (d) (ii) (see L 2002, ch 11, § 1), the provision we consider today.[FN3]
The Senate and Assembly memoranda in support of the 1999 bill both state that the original
"language of the statute requires a detailed analysis of the statutes in other jurisdictions to determine whether registration is required in New York State. The bill sets forth a clear method to determine whether registration in New York State is required: if registration is required in the jurisdiction of conviction, registration will be required in New York" (Senate Introducer's Mem in Support, 1999 NY Senate Bill S6100, 1999 McKinney's Session{**32 NY3d at 552} Laws of NY at 1866 [emphasis added]; Assembly Mem in Support, 1999 NY Assembly Bill A9020 [emphasis added]).
The Governor's Program Bill Memorandum states precisely the same purpose (see Governor's Program Bill Mem, 1999 NY Legis Ann at 266).
" 'It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature' " (Matter of Anonymous v Molik, 32 NY3d 30, 37 [2018], quoting Patrolmen's Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976]). The legislative history unequivocally demonstrates that the legislature's purpose in enacting Correction Law § 168-a (2) (d) (ii) was to provide "a clear method" for determining whether a person convicted of a felony in another jurisdiction is required to register as a sex offender in New York. A straightforward process for deciding whether registration is required was the touchstone.
[*8]
The obvious, straightforward construction of Correction Law § 168-a (2) (d) (ii), in furtherance of the legislative goal, is that the legislature, in referring to an offender who "is required to register as a sex offender in [another] jurisdiction" (Correction Law § 168-a [2] [d] [ii]), was describing an offender who is required to register on a registry set up by the other jurisdiction pursuant to the dictates of the federal Crimes Against Children and Sexually Violent Offender Registration Act. In other words, the legislature used the term "sex offender" in Correction Law § 168-a (2) (d) (ii) in a manner that precisely corresponds with the broad definition given to that term in Correction Law § 168-a (1). A person is a "sex offender" based on a crime committed in New York if required to register under the provisions of SORA, regardless of whether there was an "actual or potential sexual aspect" of the enumerated crime of conviction (Knox, 12 NY3d at 66). Similarly, a person "is required to register as a sex offender in [another] jurisdiction" within the meaning of Correction Law § 168-a (2) (d) (ii) if the individual is required to register under that jurisdiction's federally compliant registration mechanism for the perpetrators of sex offenses and crimes against children, regardless of whether the person was convicted of a sexual crime or instead a registerable offense against a minor that is not sexual in nature.
In contrast to the clear method prescribed by the legislature, the majority adopts a criterion for being "required to register as a sex offender in [another] jurisdiction" that is far from easy {**32 NY3d at 553}to apply and has no basis in the statutory text or legislative history. The majority would have "a reviewing court . . . determine whether the foreign jurisdiction considers the offender a sex offender" (majority op at 
544).[FN4] The source of this requirement is elusive. It cannot be plain language. Neither the statute's language ("required to register as a sex offender in the jurisdiction in which the conviction occurred") nor the very similar language we used in People v Kennedy (7 NY3d 87, 91 [2006] ["required to register as a sex offender in the other jurisdiction as a result of that conviction"]), relied on by the majority, says anything to direct "the Board or a reviewing court [to] first determine whether the foreign jurisdiction considers the offender a sex offender" (majority op at 
544). Indeed, when we summarized the 1999 amendment in Matter of North v Board of Examiners of Sex Offenders of State of N.Y. (8 NY3d 745 [2007]), also cited by the majority, we simply wrote that "an offender must register in New York if that person committed a felony subject to registration in the foreign jurisdiction" (North, 8 NY3d at 749 [emphasis added]).
Once embarked on its course, the majority concedes that "the Virginia statute does not clearly define a 'sex offense' or a 'sex offender' " (majority op at 
545-546) and then gives only minimal guidance about the nature of the inquiry into whether an offense is "considered" a sex offense by another jurisdiction. Rather than apply the straightforward process enacted by the legislature, the majority engages in a lengthy statutory construction exercise, interpreting numerous provisions of Virginia law. Among other things, the majority looks to the fact that the list of Virginia's registerable offenses includes a subdivision (Va Code Ann § 9.1-902 [A] [1]) and definitional subsection (Va Code Ann § 9.1-902 [B]), in which all the enumerated offenses "contain some sexual component" (majority op at 
546). The majority then invites us to observe that "this list is wholly separate from what the statute labels as 'Murder' " (majority op at 
546), which requires registration under Virginia Code § 9.1-902 (A) (3) and (D).
The majority does not mention, however, that, like murder, "sexually violent offense[s]" are also registerable under a separate subdivision (Va Code Ann § 9.1-902 [A] [4]) and subsection {**32 NY3d at 554}(Va Code Ann § 9.1-902 [E]) from the "sex offenses" listed in Virginia Code § 9.1-902 (B). Presumably, Virginia "considers" sexually violent offenders to be sex offenders but, under the majority's proposed analysis of Virginia's statutes, this would not follow. Based on the majority's analysis, because sexually violent offenders, like child murderers, belong to a different category in the Virginia statute from sex offenders, sexually violent offenders are not "considered" to be sex offenders in Virginia and would not be required to register in New York.
The majority does not stop at analyzing other states' statutes. It would also have the trial courts conduct a comprehensive review of other states' case law to determine whether "a different interpretation of [a] registry statute" [*9]is required (majority op at 
547). Somehow, this type of in-depth analysis of another state's statutes, to be followed by a survey of that state's case law, is deemed a "minimal inquiry" that is not "cumbersome" (majority op at 
547).
The majority also contemplates that reviewing courts can determine, based on a know-it-when-we-see-it intuition, whether the registerable offense in the other jurisdiction possesses "some sexual component," so as to decide whether the other jurisdiction would "consider" the offense a sex offense. In this regard, the majority appears to require analysis of the facts of the underlying crime. In its discussion of defendant's crime of conviction, the majority relies on the undisputed fact that there was no sexual component to the crime. It notes the conclusion of the Virginia Department of Corrections that defendant "had committed the crime because [his half sister] was harassing him about dealing drugs" and credits defendant's claim, made in 1989 or 1990, that he was "hearing voices telling him to kill people" (majority op at 
543). The ramifications of this analysis are obscure. Presumably, the defendant would be subject to registration in New York if there had been evidence in the record that his crime did have a sexual component. If so, the majority departs from its ostensible "plain language analysis" of the statutes and case law to focus on the individual facts of each case. If not, then defendant would avoid registration in New York even though he committed a sex crime that required registration in Virginia.
Whether the majority would have courts look to the elements of the crime of conviction or to the record, intuiting what another jurisdiction would "consider" a sex offense is certainly not the "clear method" the legislature had in mind. Moreover, {**32 NY3d at 555}long before a reviewing court must wrestle with such matters, the Division of Criminal Justice Services and the Board of Examiners of Sex Offenders must grapple with them under the majority decision. Presumably, the exercise will involve the authorities in New York attempting to obtain records from out-of-state courts, which may or may not still possess them. Then, in some cases, not too different from the one before us, the next step would be scouring any available records for evidence of whether the facts underlying the crime of conviction involved hints of a sexual element. Alternatively, or in addition, the agencies may find themselves focused for the most part on intricate analyses of foreign jurisdictions' statutes. In either event, the majority's interpretation of Correction Law § 168-a (2) (d) (ii) increases the risk that dangerous sex offenders will escape registration in New York. Instead of such convoluted criteria, I believe that the very significant "administrative burden[s]" faced by the agencies "justif[y] a hard and fast rule" (Knox, 12 NY3d at 69).
The majority supplants the legislature's straightforward method with an impractical invention that will obstruct officials every time they are faced with the question whether an offender from another state must register here. In short, the Court has defeated the purpose of the statute. I vote to reverse.
Judges Rivera, Garcia and Wilson concur; Judge Fahey dissents in an opinion in which Chief Judge DiFiore and Judge Stein concur.
Order affirmed.

Footnotes

Footnote 1:Megan's Law required dissemination of "relevant information" on registered sex offenders to the public by state and local law enforcement officials (codified as amended at 42 USC § 14071 [d] [2], as added by Pub L 104-145, 110 US Stat 1345).

Footnote 2:The Pam Lychner Act created a federally-run database thereby strengthening the interconnectivity between the federal scheme and "minimally sufficient" state programs (codified as amended at 42 USC §§ 14072-14073, as added by Pub L 104-236, 110 US Stat 3093).

Footnote 3:Although not before us, the dissent misreads our conclusion in this case as implying that, because " 'sexually violent offense[s]' are also registerable under a separate subdivision . . . and subsection . . . from the 'sex offenses' listed in Virginia Code § 9.1-902 (B)," we would also have to find that Virginia does not consider one who commits a "sexually violent offense" under Virginia Code § 9.1-902 (E) a sex offender (dissenting op at 
553-554). But just as the overall structure of the Virginia statute is but one facet of our plain-language analysis in this case, our interpretation would not foreclose our reliance on other indicia within the plain language of the statute to reach a different answer to that hypothetical question.

Footnote 4:Though we need not look beyond the statute's plain language in this case, our interpretation is further buttressed by external sources of the Virginia Legislature's intent. As just one example, the Virginia Criminal Sentencing Commission in its 2005 annual report explained that "[m]ost of the offenses specified in [section 9.1-902] are felony sex offenses, but certain murder, kidnapping, burglary and misdemeanor sex offenses also require registration." (Virginia Criminal Sentencing Commission, 2005 Annual Report at 57 [emphasis added].)

Footnote 5:Furthermore, to the extent the legislature was concerned with the difficulties of applying this "essential elements" provision, it has not seen fit to remove it from the statute outright (see Correction Law § 168-a [2] [d] [i]).

Footnote 1:Given that defendant concedes that the applicable constitutional standard of review here is rational basis review, I would hold that the Appellate Division erred in concluding that the legislature had no conceivable legitimate objective for requiring those guilty of first-degree murder of a minor in Virginia to register in New York. As the People point out, the challenged statute embodies principles of comity and reciprocity among states. While the majority's "holding . . . does not diminish [defendant's] obligation to keep [Virginia] apprised of his whereabouts" (majority op at 
548 [emphasis added]), a sex offender who is not required to register in New York may seek to avoid registration obligations in Virginia and return there unknown to the authorities. The People correctly note that the legislature may have been concerned about sex offenders making "themselves less trackable by taking advantage of the imperfections inherent in the multijurisdictional, nationwide registration system." Moreover, the legislature could have rationally concluded that the task of determining whether, on a given out-of-state record, an offender has committed what a foreign jurisdiction would consider a sex offense is likely to be "difficult, cumbersome and prone to error," such that "the administrative burden, and the risk that some dangerous sex offenders would escape registration, justified a hard and fast rule, with no exceptions" (People v Knox, 12 NY3d 60, 69 [2009]).

Footnote 2:The majority suggests that crimes without a sexual component were included as "sex offenses" under SORA "as part of the statute's compliance with the federal law" (majority op at 
541). As this Court has explained, however, "the Jacob Wetterling Act does not require attaching the label 'sex offender' to the perpetrators of these crimes. That was the New York Legislature's choice" (Knox, 12 NY3d at 68).

Footnote 3:Virginia similarly requires registration of an offender convicted of "[a]ny offense for which registration in a sex offender and crimes against minors registry is required under the laws of the jurisdiction where the offender was convicted" (Va Code Ann § 9.1-902 [A] [6]).

Footnote 4:Although the majority has declared that Virginia does not consider defendant a sex offender, the record contains evidence that Virginia authorities do consider him a sex offender. Defendant's Virginia State Police offender profile describes him as having a "Sex Offender Conviction Record."