People v Edwards (2025 NY Slip Op 04922)

People v Edwards

2025 NY Slip Op 04922

Decided on September 10, 2025

Appellate Division, Second Department

Taylor, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 10, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
ROBERT J. MILLER
JANICE A. TAYLOR
PHILLIP HOM, JJ.

2023-08321

[*1]People of State of New York, respondent,
vTony Edwards, appellant.

APPEAL by the defendant from an order of the County Court (Karen M. Wilutis, J.), dated August 30, 2023, and entered in Suffolk County, which, after a hearing, designated him a level one sexually violent offender pursuant to Correction Law article 6-C.

Laurette D. Mulry, Riverhead, NY (Mark J. Ermmarino of counsel), for appellant.
Raymond A. Tierney, District Attorney, Riverhead, NY (Christopher Turk and Glenn Green of counsel), for respondent.

TAYLOR, J.

OPINION & ORDER
The main question we answer on the defendant's appeal, which concerns an issue of first impression in the Appellate Division, Second Department, is whether the County Court's designation of the defendant as a sexually violent offender pursuant to New York's Sex Offender Registration Act (SORA) (Correction Law article 6-C), and in particular Correction Law § 168-a(3)(b), violated his constitutional rights to substantive due process. For the reasons that follow, we hold that Correction Law § 168-a(3)(b), which required the defendant to be designated as a sexually violent offender as a result of criminal conduct that occurred outside of New York, and would not otherwise have resulted in such designation if the same conduct occurred within the State, violated State and federal constitutional guarantees of substantive due process insofar as that statute was applied to the defendant under the particulars of this case.
I. Factual and procedural background
According to an investigation by the Palm Beach County Sheriff's Office, on or about June 10, 2004, the defendant, then 22 years old, engaged in sexual contact with a 13-year-old victim.
In November 2004, the defendant entered a plea of guilty in a Circuit Court of the State of Florida to one count of lewd or lascivious battery in violation of Florida Statutes § 800.04(4)(a) (hereinafter the out-of-state conviction). Pursuant to the plea, the defendant was sentenced to five years of sex offender probation. The defendant was also required to register as a sex offender in Florida (see id. § 943.0435[1][b], [h][1][a][I]; [2]).
On or about March 28, 2023, the New York State Board of Examiners of Sex Offenders (hereinafter the Board) was notified that the defendant was residing at an address in Suffolk County. Pursuant to the requirements of SORA, the Board determined that the defendant was required to register as a sex offender in New York. Accordingly, the Board prepared a case summary and a risk assessment instrument that assessed the defendant a total of 40 points and recommended, in conformity with his presumptive risk level according to that score (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 3, ¶ 3 [2006] [hereinafter Guidelines]), that the defendant be designated a level one sex offender.
Thereafter, the People prepared their own risk assessment instrument, which assessed the defendant additional points under, inter alia, risk factor 11 for "drug or alcohol abuse." Nonetheless, the People agreed with the Board's recommendation that the defendant be designated a level one sex offender. Pursuant to Correction Law § 168-a(3)(b), the People also provided notice [*2]of their intent to seek a "sexually violent offender" designation for the defendant based on the out-of-state conviction because the defendant was required to register as a sex offender in Florida.
On August 30, 2023, the County Court conducted a hearing to determine the defendant's risk level pursuant to Correction Law § 168-n. At the hearing, the People argued that the defendant should be designated as a sexually violent offender based on the out-of-state conviction, regardless of whether the underlying criminal offense, as defined by Florida law, would have qualified as a sexually violent offense if it had been committed and prosecuted in New York.
Following the hearing, the County Court determined, inter alia, that pursuant to Correction Law § 168-a(3)(b), the defendant must be designated as a sexually violent offender because of the out-of-state conviction. The defendant appeals, challenging, inter alia, the constitutionality of Correction Law § 168-a(3)(b) insofar as applied to him.
II. Legal framework
a. Substantive due process
Under the 14th Amendment to the United States Constitution and article 1, section 6 of the New York State Constitution, the State government may not deprive an individual "of life, liberty, or property, without due process of law" (US Const, Fourteenth Amend, § 1; see People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 36 NY3d 187, 198). "[T]he guarantee of 'due process of law'" includes "'a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them'" (People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 36 NY3d at 198, quoting Zinermon v Burch, 494 US 113, 125; see DeShaney v Winnebago County Dept. of Social Servs., 489 US 189, 200; McCarthy v County of Nassau, N.Y., 230 AD3d 485, 487-488).
"Substantive due process provides heightened protection against government interference with certain fundamental rights and liberty interests" (People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 36 NY3d at 198 [internal quotation marks omitted]). Within this context, fundamental rights are those "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed" (id. [internal quotation marks omitted]; see People v Knox, 12 NY3d 60, 67).
Substantive due process prohibits the State from infringing upon "a 'fundamental' liberty interest 'unless the infringement is narrowly tailored to serve a compelling state interest'" (People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 36 NY3d at 199, quoting Reno v Flores, 507 US 292, 302). However, "where no fundamental right is infringed [upon,] legislation is valid if it is rationally related to legitimate government interests" (People v Knox, 12 NY3d at 67; see Washington v Glucksberg, 521 US 702, 728; People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 36 NY3d at 199).
The defendant's "as-applied" challenge to the constitutionality of Correction Law § 168-a(3)(b), as the term implies, calls on this Court to consider whether the statute can be constitutionally applied to this particular defendant under the unique facts of his case (People v Brown, 41 NY3d 279, 284 [internal quotation marks omitted]).
b. SORA and due process
"A SORA proceeding, which is civil in nature, determines the risk of reoffense by a person convicted of a qualifying sex offense" (People v Pettigrew, 14 NY3d 406, 408). "The legislature's stated goals in enacting SORA were 'to protect the public from the danger of recidivism posed by sex offenders, to assist the criminal justice system to identify, investigate, apprehend and prosecute sex offenders, and to comply with the Federal Crime Control Act'" (People v Parris, 153 AD3d 68, 75, quoting People v Stevens, 91 NY2d 270, 275). "To achieve these objectives, SORA details a registration and notification system for individuals convicted of sex offenses based on a three-tier classification regime and authorizes the dissemination of certain information about those individuals to vulnerable populations and the public" (id. at 76 [citations and internal quotation marks omitted]). "An offender is required by law to register as a sex offender for a period that correlates with his [or her] particular risk level and designation" (id. [internal quotation marks omitted]).
Correction Law § 168-h(2) provides, inter alia, that "[t]he duration of registration and verification for a sex offender who, on or after March eleventh, two thousand two, is designated a . . . sexually violent offender, . . . or who is classified as a level two or level three risk, shall be annually for life." Otherwise, a "level one [offender], evidencing a low risk of reoffense," is "relieved of the duty to register after 20 years" (People v Mingo, 12 NY3d 563, 571; see Correction [*3]Law § 168-h). Registration requirements for level one sex offenders include, among other things, annual verification of address (see Correction Law § 168-f[2][b]), in-person appearances every three years for the purpose of providing a current photograph (see id. § 168-f[2][b-3]), and timely notice of "any change of address, internet accounts with internet access providers belonging to such offender, internet identifiers that such offender uses, or his or her status of enrollment, attendance, employment or residence at any institution of higher education" (id. § 168-f[4]). A defendant who fails to register is subject to criminal prosecution in state and federal court (see id. § 168-t; 18 USC § 2250[a]).
The Court of Appeals has characterized a defendant's liberty interest in not being subject to SORA as equivalent to not having "a misleading label attached to one's serious crime," and has held that such an interest is not fundamental for the purposes of evaluating a related substantive due process claim (People v Knox, 12 NY3d at 67). Thus, in this case, because the substantive due process right implicated by the defendant's designation as a sexually violent offender is not fundamental, the challenged provision of the Correction Law, insofar as applied to the defendant, must be upheld if it is rationally related to a legitimate government interest.
The acts of the Legislature are presumed to be constitutional and, therefore, a defendant bears a heavy burden in establishing that challenged legislation is unconstitutional as applied to him or her (see id. at 69; People v Malloy, 228 AD3d 1284, 1288; People v Taylor, 42 AD3d 13, 16). A party making such a contention must show that the challenged "statute is so unrelated to the achievement of any combination of legitimate purposes as to be irrational" (People v Knox, 12 NY3d at 69 [internal quotation marks omitted]; see People v Malloy, 228 AD3d at 1288; People v Taylor, 42 AD3d at 16). In other words, "'[a] challenged statute will survive rational basis review so long as it is rationally related to any conceivable legitimate State purpose . . . [and] courts may even hypothesize the Legislature's motivation or possible legitimate purpose'" (People v Malloy, 228 AD3d at 1288 [internal quotation marks omitted], quoting Myers v Schneiderman, 30 NY3d 1, 15; see People v Taylor, 42 AD3d at 16).
c. SORA's foreign registration clause
Correction Law § 168-a(3) defines a "sexually violent offense" in three different ways. First, a sexually violent offense is one of several felony offenses enumerated in the Penal Law (see id. § 168-a[3][a][i]-[iii]). Second, a sexually violent offense is "a conviction of an offense in any other jurisdiction which includes all of the essential elements of any such [enumerated] felony" (id. § 168-a[3][b]). Third, as relevant here, a sexually violent offense is a "conviction of a felony in any other jurisdiction for which the offender is required to register as a sex offender in the jurisdiction in which the conviction occurred" (hereinafter the foreign registration clause) (id.).
Likewise, a "sex offense" is defined as, inter alia, a conviction of "a felony in any other jurisdiction for which the offender is required to register as a sex offender in the jurisdiction in which the conviction occurred" (id. § 168-a[2][d][ii]). Accordingly, both a "sex offense" and a "sexually violent offense" are defined by the same language with respect to felony convictions in out-of-state jurisdictions that require sex offender registration in those jurisdictions (see People v Talluto, 39 NY3d 306, 313).
Notably, "[t]he Advisory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the Courts of the State of New York . . . has concluded that subdivision (3) (b)'s foreign registration clause was added in error and, accordingly, has recommended every year since 2010 that the legislature delete it" (id.). While the Court of Appeals in People v Talluto acknowledged the possibility that the foreign registration clause may be the result of a "legislative drafting error" (see id. at 314-315), the Court emphasized that it was not determining the constitutionality of that provision (see id. at 310; cf. People v Brown, 41 NY3d at 284; People v Malloy, 228 AD3d at 1289). Rather, in Talluto, the Court, as an issue of "pure statutory interpretation," held that SORA does not provide courts with the discretion to disregard the "unambiguous statutory definition of 'sexually violent offender'" as set forth in the foreign registration clause (People v Talluto, 39 NY3d at 310, 315).
1. Legislative history of the foreign registration clause
"In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act" (hereinafter the JWA) (People v Diaz, 32 NY3d 538, 540). "The JWA conditioned federal funding on states establishing 'programs that require . . . a person who is convicted of a criminal offense against a victim who is a minor or who is convicted of a sexually violent offense' to register a current address with the State" (id., quoting former 42 USC § 14071[a][1][A], as added by Pub L 103-322, 108 US Stat 2038). "Under these two broad [*4]categories of convictions, the JWA set forth a list of offenses that required registration" (id.).
In 1995, the New York State Legislature enacted SORA in response to the JWA (see L 1995, ch 192; People v Talluto, 39 NY3d at 312; People v Diaz, 32 NY3d at 540). "SORA, in its original form, encompassed out-of-jurisdiction convictions of only those offenses that satisfied the essential elements test for a sex offense or a sexually violent offense"; therefore, "[t]here was no foreign registration clause" (People v Talluto, 39 NY3d at 312 [internal quotation marks omitted], citing L 1995, ch 192, § 2).
"After several amendments to the JWA, including Megan's Law as well as the Pam Lychner Act, Congress added a reciprocity requirement in 1997" (People v Diaz, 32 NY3d at 541 [footnotes omitted]). The reciprocity requirement "directed states to 'include in [their] registration program[s] residents who were convicted in another State' of at least the offenses enumerated in the federal scheme (former 42 USC § 14071[b][7], as added by Pub L 105-119, tit I, § 115, 111 US Stat 2440, 2463), while allowing states to require 'coverage of any offenses beyond those [enumerated under 42 USC § 14071(a)(3)(A)-(B)]' as a 'matter of state discretion'" (id., quoting 64 Fed Reg 572-01, 573 [1999]).
In 1999, the New York State Legislature "responded by amending the definitions of 'sex offense' and 'sexually violent offense' to add . . . foreign registration clauses" to both definitions (People v Talluto, 39 NY3d at 312, citing L 1999, ch 453, §§ 1-2). According to the Governor's Program Bill Memorandum, "the language was added because the essential elements test was deemed to be noncompliant with the recent congressional directive" (id., citing L 1999, ch 453, Governor's Program Bill Mem No. 116 at 6; see Bill Jacket, L 1999, ch 453).
"The Adam Walsh Child Protection and Safety Act of 2006, which superseded the JWA, continues to place compliance requirements on states subject to guidelines issued by the Attorney General" (People v Diaz, 32 NY3d at 541; see 34 USC §§ 20912, 20927).
III. The defendant's as-applied due process challenge
a. Preservation
The defendant's contention on appeal that his designation as a sexually violent offender pursuant to Correction Law § 168-a(3)(b) violated his constitutional rights to substantive due process was preserved for appellate review when defense counsel objected to said designation at the SORA hearing on due process grounds (see CPL 470.05[2]).
b. Merits
We hold that the foreign registration clause, insofar as applied to the defendant, is not rationally related to a legitimate government interest, and therefore violates his substantive due process rights (see People v Brown, 41 NY3d at 284).
In particular, we agree with the Appellate Division, Fourth Department's conclusion that,
"[D]esignating [a] defendant as sexually violent merely because he [or she] had an out-of-state sex conviction requiring out-of-state registration, regardless of whether that underlying offense is violent—as is currently required by the text of Correction Law § 168-a(3)(b)—bears no rational relationship to the legitimate governmental interest of informing the public of threats posed by sex offenders" (People v Malloy, 228 AD3d at 1289).
In fact, labeling a defendant as a sexually violent offender regardless of whether the underlying offense involved violence may have the adverse effect of misleading the public as to the level of risk posed by him or her (see People v Brown, 41 NY3d at 291; People v Malloy, 228 AD3d at 1289). Moreover, the government's interest in protecting the public from the potential harm posed by sex offenders "is already served by requiring [a] defendant to register in New York as a sex offender" (People v Malloy, 228 AD3d at 1288; see People v Cromwell, 229 AD3d 1176, 1178).
To the extent that the People contend that the foreign registration clause is rationally related to the legitimate government interest of bringing New York into compliance with the federal law that conditions federal funding on the establishment of the sex offender registration framework set forth in the JWA and its amendments and successor statutes (see generally 34 USC § 20911 et seq.; People v Diaz, 32 NY3d at 540-541), that contention is without merit. SORA was enacted by the New York State Legislature in 1995 in response to an act of Congress that conditioned federal funding on states establishing sex offender registries (see People v Talluto, 39 NY3d at 312; People v Diaz, 32 NY3d at 540-541; see also L 1995, ch 192). The foreign registration clause was added later, only after Congress implemented "a reciprocity requirement, directing states to require sex offender registration of residents convicted of offenses in other states that fit within the federal [*5]scheme" (People v Talluto, 39 NY3d at 312; see L 1999, ch 453, §§ 1-2; People v Diaz, 32 NY3d at 541; People v Bullock, 125 AD3d 1, 8-9).
To comply with federal law, the states must meet or exceed criteria related to, inter alia, the duration of sex offender registration, appearance frequency, and website disclosure requirements (see 34 USC §§ 20911-20915; see also Office of the Attorney General; The National Guidelines for Sex Offender Registration and Notification, 73 Fed Reg 38030-01 [2008] [hereinafter National Guidelines]). Thus, the requirements of federal law relate to substance, not form or terminology (see National Guidelines at 38053). In fact, federal law no longer uses the term "sexually violent offense" (see 34 USC § 20911) and, even under the JWA, that term was simply a proxy for any registrable sex offense that was not specifically an offense committed against a minor (see former 42 USC § 14071[a][3]). The federal requirements are fulfilled by requiring out-of-state sex offenders to register as sex offenders when they move into New York according to their appropriate risk level. SORA's additional requirement that an out-of-state sex offender's status automatically transmutes into that of a sexually violent offender simply by virtue of moving to New York is not rationally related to any federal requirement. The registration laws of certain states do not include a category of "sexually violent offenses" (see People v Talluto, 39 NY3d at 314 [discussing the absence of the term "sexually violent offense" in Michigan's sex offender registration law]; NJ Stat Ann § 2C:7-2; cf. Fla Stat § 775.21[4][a][1] [Florida uses the term "sexual predator" but not sexually violent offense or offender]). Hence, the foreign registration clause is not just overinclusive (see People v Knox, 12 NY3d at 69), but potentially unrelated to whether the offense involved violence.[FN1]
Notably, the defendant pleaded guilty to violating Florida Statutes former § 800.04(4)(a), which, at the time of his plea, provided that "[a] person who . . . [e]ngages in sexual activity with a person 12 years of age or older but less than 16 years of age . . . commits lewd or lascivious battery, a felony of the second degree" (eff Oct. 1, 2000 to Aug. 31, 2005). Had the defendant been prosecuted for that conduct in New York, at most, he would have been guilty of sexual abuse in the second degree, which does not constitute a sexually violent offense (see Correction Law § 168-a[3]), and is only a misdemeanor (see Penal Law § 130.60[2]). The defendant's out-of-state conviction does not include all of the essential elements of any of the enumerated sexually violent offenses set forth in Correction Law § 168-a(3)(a). Thus, the defendant was designated as a sexually violent offender solely by virtue of the foreign registration clause (see People v Cromwell, 229 AD3d at 1177).
The New York State Legislature evidently has determined that sex offenders who committed the same acts in New York upon which the defendant's out-of-state-conviction was predicated, and, like the defendant, are later determined to be a level one sex offender (see Correction Law § 168-n; Guidelines at 1-7), do not pose a risk to society significant enough to require annual sex offender registration and verification for life. Under the circumstances of this case, that result should not change simply because the defendant committed his offense in a different state (see People v Zellefrow, 229 AD3d 1069, 1071).
In sum, we hold that the foreign registration clause, insofar as applied to the defendant designating him a sexually violent offender, was not rationally related to a legitimate government interest (see People v Brown, 41 NY3d at 290; People v Malloy, 228 AD3d at 1289).
IV. The defendant's remaining contentions
The defendant's facial challenge to the foreign registration clause on due process grounds is without merit. "Generally, a party making a facial challenge to a regulation has the extraordinary burden . . . of proving beyond a reasonable doubt that the challenged provision suffers wholesale constitutional impairment" (Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 40 NY3d 55, 61 [internal quotation marks omitted]; see Matter of 1160 Mamaroneck Ave. Corp. v City of White Plains, 211 AD3d 723, 725). "Thus, a facial challenge must fail so long as there are circumstances under which the challenged provision could be constitutionally applied" (Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. [*6]of Transp., 40 NY3d at 61 [internal quotation marks omitted]).
Here, the defendant failed to establish beyond a reasonable doubt that there are no circumstances under which the foreign registration clause could be constitutionally applied (see People v Malloy, 228 AD3d at 1291-1292; cf. People v Suttle, 209 AD3d 451, 452-453; see also People v Talluto, 39 NY3d at 316 [Wilson, J., dissenting]).
Furthermore, the defendant's contention that the County Court erred in assessing him 15 points under risk factor 11, related to alleged drug or alcohol abuse, is academic because deducting those points would not alter his presumptive risk level, which was the lowest possible risk level, and from which the court did not depart (see People v Torres, 210 AD3d 1027, 1028).
The defendant's contentions that the foreign registration clause violates the Equal Protection Clauses of the United States and New York Constitutions are unpreserved for appellate review.
Accordingly, the order is modified, on the law and the facts, by deleting the provision thereof designating the defendant a level one sexually violent offender, and substituting therefor a provision designating the defendant a level one sex offender; as so modified, the order is affirmed.
DUFFY, J.P., MILLER and HOM, JJ., concur.
ORDERED that the order is modified, on the law and the facts, by deleting the provision thereof designating the defendant a level one sexually violent offender, and substituting therefor a provision designating the defendant a level one sex offender; as so modified, the order is affirmed, without costs or disbursements.
ENTER:
Darrell M. Joseph
Clerk of the Court

Footnotes

Footnote 1:A number of states define sexually violent offenses that occur in a foreign jurisdiction by utilizing the language of "substantially similar" or "substantially equivalent" to a sexually violent offense that occurs within such state (see e.g. Tex Code Crim Proc § 62.001[6][E]; Ohio Rev Code Ann § 2971.01[L][2]; Mass Gen Laws Ann ch 6, § 178C ["a like violation"]).